Zelda ARMSTRONG, Patricia Armstrong, Yvonne Armstrong, Clifton Vernell Armstrong, Anthony George Armstrong and Bruce Armstrong, by their mother, Mrs. Albirta Armstrong, Anthony Washington, by his grandfather and guardian, Coleman Washington, Sr., Diane Clark, Bobby Jane Clark, Willie Clark, Theodore Clark, Jonathan Clark, Curtis Clark, Brenda Faye Clark, and Priscilla Clark, by their mother, Mrs. Clara Clark, Calvin Vallier, Shirley Vallier, Terry Vallier, Charles Vallier, and Raymond Vallier, by their mother, Mrs. Elizabeth Vallier, Calvin Mitchell, Mammon Mitchell, Perry Earl Mitchell, Tracy Deane Mitchell, Francrettachajaundess Mitchell, Robbette Mitchell, Carolyn Denise Mitchell, by their parents, Buster and Lottie Mitchell, Martha Anne Patt, Linzy Patt, Terry Patt, Havel Laverne Patt, Rodney Wayne Patt, by their mother, Mrs. Daisy Mae Patt, Hazel Washington, Coleman Washington, III, Cora Lee Washington, Vera Washington, Christopher Washington and Mary Washington by their father, Coleman Washington, Jr., Patricia Hampton, by her mother, Mrs. Lillian Hampton, Francis Newell, by his mother, Mrs. Lu-gusta Newell, and on behalf of those similarly situated, Plaintiffs,

v.

Jack REED, Superintendent of the Mississippi State Penitentiary, North Sunflower Academy, Joe Carpenter, Chairman of the Board of Trustees of North Sunflower Academy, Meyer Tollison, Headmaster of North Sunflower Academy, Indianola Academy, J. A. Ely, Chairman of the Board of Trustees of Indianola Academy, James Lear, Headmaster of Indianola Academy, E. P. Tolbert, Jr., Office Manager of Mississippi State Penitentiary and Chief Executive Officer of "Parchman School Committee", Charles Riddell, Chairman of the Mississippi State Penitentiary Board, Hollaman M. Raney, Cleve McDowell, Tyler H. Fletcher and Andrew C. Baker, Members of the Mississippi State Penitentiary Board, Dr. Garvin H. Johnston, State Superintendent of Education, and H. T. Godfrey, Director of Vocational Rehabilitation at Mississippi State Penitentiary, Defendants.

No. GC 74–118–S.

United States District Court, N. D. Mississippi, Greenville Division.

July 27, 1978.

David M. Lipman, Washington, D. C., for plaintiffs.

P. Roger Googe, Jr., Sp. Asst. Atty. Gen., Jackson, Miss., for defendants.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

The action sub judice was filed November 21, 1974. Plaintiffs named as defendants a number of segregated private schools or academies (hereafter "academies"), located in the area of the State of Mississippi, where the Mississippi State Penitentiary (hereafter "Parchman") is situated. The litigation has been terminated as to the academies. This memorandum of decision relates only to the remaining issue and pertains to the allowance of an attorney's fee and expenses for plaintiffs' counsel against the state defendants hereafter named, as part of the court costs.

Plaintiffs sued the state officials at Parchman, namely, Jack Reed, then Superintendent; E. P. Tolbert, Jr., Office Manager; the members of the Mississippi State Penitentiary Board, namely Charles Riddell, Chairman, Hollaman M. Raney, Cleve McDowell, Tyler H. Fletcher and Andrew C. Baker; Dr. Garvin H. Johnston, State

Superintendent of Education; and H. T. Godfrey, Director of Vocational Rehabilitation at Parchman (hereafter "state defendants").

The plaintiffs have moved for the allowance of an attorney's fee and expenses as a part of the costs for services rendered in prosecuting the action against the state defendants.

Prior to 1969, the Mississippi statutes governing the operation of Parchman provided for the payment from state funds for the costs of transportation for the children of Parchman employees to a school or schools adjacent to the Parchman Farms. At that time, there were no segregated academies to which the children could be transported.

In the wake of the integration of public schools in Mississippi, segregated private academies were established near and adjacent to the Parchman Farms.

At its 1969 session, the Mississippi Legislature amended the statute so as to provide that transportation expense and tuition fees, not to exceed $60.00 per month, could be paid from the Parchman Support and Maintenance Fund for children of its employees to attend an elementary or secondary educational institution. Mississippi Code Ann. § 47–5–91 (1972).

During the period from 1970 through 1975, the officials at Parchman paid from its support and maintenance fund to private segregated academies on behalf of the children of its employees the sum of $312,999.96 and to public schools the sum of $5,825.00.[1]

Plaintiffs brought the action sub judice to terminate state financial support through the medium of the Parchman Support and Maintenance Fund to segregated private academies organized in great numbers throughout the state to avoid the impact of integrated public education.

Plaintiffs have been successful in their efforts to require the defendant segregated private academies to reimburse the supply and maintenance fund at Parchman for at least a portion of the fund channeled to them through the Parchman source.

The legislature at its 1975 session amended Section 47–5–91 so as to provide that the costs of transportation and tuition to be paid for and on behalf of the children of its employees from the supply and mainte-

---

1. The statutory language codified as Mississippi Code Ann. § 47–5–91, (1972) at the time this action was filed became effective September 19, 1969, and was originally codified as Mississippi Code Ann. § 7967 (1942). Section 47–5–91 read as follows when suit was filed:

§ 47–5–91. *Transportation of children of employees to school—payment of tuition.*

The superintendent is authorized and directed to provide for transportation of children of employees of the Mississippi State Penitentiary both in Sunflower County and Quitman County to an elementary or secondary educational institution, and to pay for such transportation out of the support and maintenance fund of the penitentiary. The superintendent shall further pay, in his discretion, to any elementary or secondary educational institution in which said children are sent an amount not to exceed sixty dollars ($60.00) per student per month as tuition, which also shall be paid out of the support and maintenance fund of the penitentiary. Any student who receives benefits under this section shall not be eligible for any other educational financial state grant or loan.

Effective March 24, 1975, the statute was amended to read as follows:

The superintendent is authorized and directed to provide for transportation of children of employees of the Mississippi State Penitentiary both in Sunflower County and Quitman County to an elementary or secondary *public* educational institution adjacent to said farm and to pay for such transportation out of the support and maintenance fund of the penitentiary. The superintendent shall further pay, in his discretion, to any elementary or secondary *public* educational institution in which said children are sent an amount not to exceed Sixty Dollars ($60.00) per student per month as tuition, which also shall be paid out of the support and maintenance fund of the penitentiary. Any student who receives benefits under this section shall not be eligible for any other educational financial state grant or loan.

Ch. 404, § 1 [1975] General Laws of Miss. (emphasis added).

Section 47–5–91 was again amended, effective July 1, 1976, by Ch. 440, § 63 [1976] General Laws of Miss. *codified at* Miss.Code Ann. § 47–5–91 (Cum.Supp.1977), in particulars not here pertinent.

nance fund would be paid only to public educational institutions. See note 1, *supra.*

Upon the assurances of the state officials that there would be strict compliance by them with the statute as amended and that all financial support to segregated private academies would be withdrawn as required by the amendment, the court entered an order holding the matter moot as to the state defendants and directed the entry of a final judgment in their favor.

■ The state defendants contend that because a final judgment in their behalf has been entered, plaintiffs are not "prevailing parties", and are not entitled to an allowance of an attorney's fee and expenses as a part of the costs.

It is clear, however, that plaintiffs accomplished their goal. They sought and obtained the elimination of expenditures from the Parchman Supply and Maintenance fund to segregated private academies and recovered the repayment of sizeable funds from the academies for the use and benefit of that fund. Such being the case, it is the court's opinion that plaintiffs are the "prevailing parties" in the action sub judice not only as against the segregated private academies, but also as against the state defendants.

The plaintiffs, as the prevailing parties, are entitled to an award of a reasonable attorney's fee and expenses as a part of the court costs accrued in the action.

Plaintiffs argue that they are entitled to an award of an attorney's fee on three alternate grounds: (1) The Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988;[2] (2) Section 718 of the Emergency School Aid Act, 20 U.S.C. § 1617;[3] and (3) the bad faith of the state defendants, allowable under the doctrine recognized in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *F. D. Rich Co. v. Industrial Lumber Co.*, 417 U.S. 116, 129, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974) (Citing *Vaughan v. Atkinson*, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962)); *cf. Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 66 S.Ct. 1176, 90 L.Ed. 1447 (1946).

■ Taking up the last, or third reason first, the court does not find that the record establishes that the state defendants acted "in bad faith, vexatiously, wantonly, or for oppressive reasons", as mentioned in *Rich, supra*, at 417 U.S. 129, 94 S.Ct. 2157. The state officials acted pursuant to statutory law, Section 47–5–91, during the period in-

2. 42 U.S.C. § 1988 provides:

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty. In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or in any civil action or

proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

3. 20 U.S.C. § 1617 provides:

Upon the entry of a final order by a court of the United States against a local educational agency, a State (or any agency thereof), or the United States (or any agency thereof), for failure to comply with any provision of this chapter or for discrimination on the basis of race, color, or national origin in violation of title VI of the Civil Rights Act of 1964, or the fourteenth amendment to the Constitution of the United States as they pertain to elementary and secondary education, the court, in its discretion, upon a finding that the proceedings were necessary to bring about compliance, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

volved in the litigation sub judice. The statute as it existed during the pertinent period authorized the superintendent to provide transportation for the children of employees of the Mississippi State Penitentiary in Sunflower and Quitman Counties to "any elementary or secondary educational institution," to pay for such transportation out of the support and maintenance fund and in his discretion, to pay tuition costs not in excess of $60.00 per month for each student from the support and maintenance fund.

In the exercise of his discretion, the superintendent provided for the attendance of most of the children at segregated private academies instead of directing them to public schools in the area. This action of the superintendent does not, in the court's opinion, constitute such bad faith, vexatious, wanton or oppressive conduct on the part of the state defendants as to justify the allowance of attorneys' fees on the "bad faith" doctrine.

■ Attorney's fees and expenses are allowable, however, in the court's discretion, pursuant to The Civil Rights Attorney's Fees Award Act of 1966, 42 U.S.C. § 1988, *supra*, and The Emergency School Aid Act, 20 U.S.C. § 1617, *supra*.

The action sub judice is analogous to the Mississippi textbook case, *Norwood v. Harrison*, 410 F.Supp. 133 (N.D.Miss.1976), *appeal dismissed*, 563 F.2d 722 (5th Cir. 1977).

The issue involved in *Norwood* was whether the state practice of furnishing free state textbooks to segregated academies violated the strictures of the Fourteenth Amendment to the Constitution of the United States. The issue here involved the granting of financial aid from state funds to segregated academies.

The court finds that *Norwood* is controlling here, and adopts the reasoning so ably expressed by Chief Judge Keady as applicable to the action sub judice.

The court, therefore, concludes that Section 718 of the Emergency School Aid Act, 20 U.S.C. § 1617 provides statutory authority for the exercise of the court's discretion

in making an award of attorney's fees and expenses to counsel for plaintiffs.

The court also finds that The Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, *supra*, provides statutory authority for the award of attorney's fees.

As to the exercise by the court of the discretion vested in it by the Acts aforesaid, such exercise must be limited by *Northcross v. Memphis Board of Education*, 412 U.S. 427, 428, 93 S.Ct. 2201, 2202, 37 L.Ed.2d 48 (1973) which held that "if other requirements of § 718 are satisfied, the successful plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust'". The court's examination of the record does not disclose any special circumstances of the kind described in *Northcross* which would justify a denial of the award of attorney's fees by the court.

■ Defendants argument that the State of Mississippi is an absent and indispensable party to the action sub judice, and that the Eleventh Amendment to the Constitution of the United States bars the entry of a monetary judgment to be paid from funds of the State of Mississippi has been dispelled by the Supreme Court's decisions in *Monell v. New York City*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), *overruling in part*, *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) and in *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). In *Hutto*, the court said:

As this Court made clear in *Fitzpatrick v. Bitzer*, 427 U.S. 445, [96 S.Ct. 2666, 49 L.Ed.2d 614,] Congress has plenary power to set aside the States' immunity from retroactive relief in order to enforce the Fourteenth Amendment. When it passed the Act, Congress undoubtedly intended to exercise that power and to authorize fee awards payable by the States when their officials are sued in their official capacities. The Act itself could not be broader. It applies to "any" action brought to enforce certain civil rights laws. It contains no hint of an exception for States defending injunction actions; indeed, the Act primarily applies to laws

passed specifically to restrain state action. See, e. g., 42 U.S.C. § 1983.

The legislative history is equally plain: "[I]t is intended that the attorneys' fees, like other items of costs, will be collected either directly from the official, in his official capacity, from funds of his agency or under his control, or from the State or local government (whether or not the agency or government is a named party)." S.Rep.No.94–1011, p. 5 (1976) (footnotes omitted). The House Report is in accord: "The greater resources available to governments provide an ample base from which fees can be awarded to the prevailing plaintiff in suits against governmental officials or entities." H.R. Rep.No.94–1558, p. 7 (1976). The Report adds in a footnote that: "Of course, the 11th Amendment is not a bar to the awarding of counsel fees against state governments. *Fitzpatrick v. Bitzer.*" *Id.*, n. 14. Congress' intent was expressed in deeds as well as words. It rejected at least two attempts to amend the Act and immunize state and local governments from awards.

.    .    .    .    .

Finally, the Attorney General argues that, even if attorney's fees may be awarded against a State, they should not be awarded in this case, because neither the State nor the Department is expressly named as a defendant. Although the Eleventh Amendment prevented respondents from suing the State by name, their injunctive suit against prison officials was, for all practical purposes, brought against the State. The actions of the Attorney General himself show that. His office has defended this action since it began. See *Holt I [v. Sarver]*, 300 F.Supp. [825], at 826. The State apparently paid earlier fee awards; and it was the State's lawyers who decided to bring this appeal, thereby risking another award.

Like the Attorney General, Congress recognized that suits brought against individual officers for injunctive relief are for all practical purposes suits against the State itself. The legislative history makes it clear that in such suits attorney's fee awards should generally be obtained "either directly from the official, in his official capacity, from funds of his agency or under his control, or from the State or local government (whether or not the agency or government is a named party)." S.Rep.No.94–1011, p. 5 (1976). Awards against the official in his individual capacity, in contrast, were not to be affected by the statute; in injunctive suits they would continue to be awarded only "under the traditional bad faith standard recognized by the Supreme Court in *Alyeska*." *Id.*, at 5 n. 7. There is no indication in this case that the named defendants litigated in bad faith before the Court of Appeals. Consequently, the Department of Correction is the entity intended by Congress to bear the burden of the counsel fees award. 437 U.S. at 694, 98 S.Ct. at 2575, 57 L.Ed.2d at 536, 539–40 (footnotes omitted)

*Monell* and *Hutto* clearly authorize an award against the state defendants in their official capacities to be paid by the Mississippi State Penitentiary from its support and maintenance fund.

### The Amount of the Award

Plaintiffs' attorney seeks an allowance of an attorney's fee of $9,920.00 and court costs and expenses amounting to $99.93. The attorney's fee, costs and expense allowance covers only that part of the litigation relating to the suit against the state defendants.[4]

■ . Taking up for consideration the matter of allowance of costs as against the state defendants pursuant to 28 U.S.C. § 1920, the court finds that the following costs are taxable under the statute:

---

4.  The private segregated academies and plaintiffs have settled the allowance of fees insofar as the private academies are concerned..

Fees of the clerk and marshal:

| | | |
|---|---|---|
| (a) Clerk—filing fee | | $15.00 |
| (b) Marshal: | | |
| (i) Service on 9 defendants at $3.00 each | $27.00 | |
| (ii) Mileage in Service of Summons | 18.00 | |
| Total fees for Marshal | $45.00 | 45.00 |
| Total fees for Clerk and Marshal | | $60.00 |

The plaintiffs claim an allowance of $41.85 to cover costs of travel for their attorney to Jackson and Parchman, Mississippi, to inspect and copy documents. This appears to be a reasonable and necessary expenditure and will be allowed.

The attorney's fee requested by plaintiffs is based upon an hourly rate of $40.00 per hour for the time which plaintiffs alleged their attorney has spent in connection with the prosecution of the case against the state defendants. The work has been itemized in the affidavit presented by plaintiffs' attorney as follows: (1) preliminary investigation (44 hours); (2) legal research (32 hours); (3) research and drafting complaint (37 hours); (4) factual investigation, research and drafting of request for documents (16 hours); (5) analysis of state defendants' answer to complaint (1 hour); (6) factual analysis of documents produced for inspection and copying (86 hours); and (7) research and drafting of motion for allowance of fees and supporting documents (32 hours). Plaintiffs' attorney states in the affidavit presented in support of the motion for allowance of fees that he has carefully reviewed the file and has made a conservative estimate of the time required for the proper presentation of the case as against the state defendants.

■ The request for allowance of fees based on an hourly charge of $40.00 amounts to $9,920 (248 hours at $40.00 per hour). The allowance of a reasonable attorney fee is governed in this circuit by the criteria established by the Court of Appeals in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Johnson* enumerates twelve different criteria which should be taken into consideration in the allowance of a reasonable attorney fee when such is to be made by the district court.

During the period of the litigation, plaintiffs' counsel was a staff attorney with certain civil rights organizations, not necessary here to mention. He was actively engaged in other litigation of the type here involved. He was not dependent upon his private practice for his livelihood and was not precluded from the acceptance of other employment because of becoming engaged in the litigation sub judice. For these reasons, a number of the criteria set forth in *Johnson* are not relevant.[5]

The court should, and will, consider the criteria established in *Johnson* which are relevant here. The court will take into consideration (1) the time and labor required to properly represent the plaintiffs against the state defendants; (2) the novelty and difficulty of the questions presented by the litigation; (3) the skill requisite to perform the legal services properly; (4) the customary fee for similar work charged by attorneys practicing before this court; (5) the importance of the issues; the amount involved and the results obtained; (6) the experience, reputation and ability of the attorney for plaintiffs and (7) awards in similar cases.

■ This litigation involved a complicated and complex question of law, one that is not ordinarily or usually handled by an attorney in the general practice of law. In order to properly represent plaintiffs, it was necessary for counsel to have expertise and skill in the handling of the type or kind of questions presented by the case. The case was handled expertly with dispatch and to a successful conclusion.

---

5. The criteria mentioned in *Johnson* which are not relevant are (1) the preclusion of other employment by the attorney due to acceptance of the case; (2) whether the fee is fixed or contingent; (3) time limitations imposed by client or the circumstances; (4) the "undesirability" of the case; (5) the nature and length of the professional relationship with the client. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717, 718, 719 (5th Cir. 1974).

The court knows the attorney representing the plaintiffs to be an experienced attorney, one who has the ability and the qualifications to properly and adequately represent plaintiffs in the pursuit of their litigation against the state defendants. He has a good reputation in this district for being successful and for presenting cases which are brought or handled by him on the docket of this court.

This court has spoken with reference to the customary fee to be allowed in cases of this nature. Chief Judge William C. Keady has recently held in a civil rights action that "the customary hourly fee prevailing within the Northern District of Mississippi for work of a strictly legal nature ranges between $35.00 and $45.00 per hour. For work not of a strictly legal nature, the hourly rates vary from $25.00 to $35.00." *Grenada County Chapter of the National Association for the Advancement of Colored People, et al. v. Grenada County Board of Supervisors, et al.,* No. WC 75–42–K (Opinion dated May 18, 1978). This holding is supported by other decisions heretofore rendered in this district both by Chief Judge Keady and by this court. *See Payne v. Travenol Laboratories, Inc.,* 74 F.R.D. 19 (N.D.Miss.1976); *Ayers v. Western Line Consolidated School District,* 404 F.Supp. 1225 (N.D.Miss.1975); *Armstead v. Starkville Municipal Separate School District,* 395 F.Supp. 304 (N.D.Miss.1975).

After a careful review of the file, the court has concluded that an allowance of $40.00 per hour for 200 hours will constitute a reasonable fee for the allowance to plaintiffs' attorney. In making a judgment as to 200 hours, it must be kept in mind that the number of hours said to have been spent in performing work necessary in the prosecution of this case against the state defendants were estimated after the work had been performed. The hours were not charged as the work progressed so that a complete and accurate record of the number of hours involved can be shown by the time records of the attorney. For this reason and exercising the court's own judgment about the time that would be required to perform the work involved in this action as

against the state defendants only, the court has concluded that an allowance of $8,000 based upon 200 hours at $40.00 an hour will be a proper allowance. The court will enter an order directing that as a part of the costs recoverable against the state defendants by the plaintiffs herein, the plaintiffs' attorney will be allowed a fee of $8,000, and expenses of $41.85. This will be in addition to costs taxable under 28 U.S.C. § 1920 of $60.00 as hereinbefore indicated.