Paula CICERO, Tammy Colston, Phyllis Hapeman Huber, Helen Lavore, Leroy Glenn, Joseph Jones, Carl Maxie Robinson, Norman Sterling, Leroy E. Wims, Mario F. Ocampo, Lawrence French, Michael Molese, Peter Grubman, Frank E. Generette, John Smith, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Ennis J. OLGIATI, Individually and as Chairman of the New York State Board of Parole, William J. Barnwell, Frank L. Caldwell, Maurice F. Dean, Martin Gilbride, Frank A. Gross, Ada Fisher Jones, Milton B. Lewis, John J. Maffucci, Louis Pierro, John J. Quinn, A. Luis Rivera, Individually and as members of the New York State Board of Parole, Benjamin Ward, Individually and as Commissioner of Correctional Services of the State of New York, Defendants.

No. 75 Civ. 2059.

United States District Court,
S. D. New York.

July 5, 1979.

David Rudenstine, New York Civil Liberties Union, New York City, for plaintiffs.

Robert Abrams, Atty. Gen. of the State of New York, New York City, for defendants; A. Seth Greenwald, Asst. Atty. Gen., New York City, of counsel.

LASKER, District Judge.

The State moves to dismiss the complaint in this action as moot. Plaintiffs agree with the State that the issues raised in the complaint are no longer at issue because of legislation which has superseded the statute which the complaint alleged to be unconstitutional. However, plaintiffs seek an award of attorney's fees pursuant to the Civil Rights Attorney's Fees Awards Act of

1976, 42 U.S.C. § 1988, prior to dismissal of the action. The motion for a fee award is denied; the complaint is dismissed.

In 1975, inmates of New York State correctional facilities brought this action challenging the parole release statute in effect in New York at that time on the ground that its provisions were so arbitrary as to violate the requirements of due process. The challenged statute, New York Correction Law § 213, provided in pertinent part:

"Discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the board of parole is of opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society."

Plaintiffs contended that the statute was impermissibly vague and required predictions as to the future behavior of inmates which were "beyond the grasp of human knowledge and expertise," *Cicero v. Olgiati*, 410 F.Supp. 1080, 1085 (S.D.N.Y.1976).

In March of 1976, the court granted plaintiffs' motion for class certification and denied in substantial part the State's motion to dismiss the complaint. The court rejected, *inter alia*, the State's argument that due process did not attach to New York's parole procedures and held that the "uncertainty of meaning of § 213's critical terms" raised a serious question as to whether the statute was not unconstitutionally vague. *Id.* at 1094.

In the summer of 1977, the New York State Legislature enacted a new parole statute which, together with its regulations, thoroughly revised the old law. N.Y. Exec.Law §§ 259 to 259–r. (Supp. 1972–78). The new statute and regulations fix a minimum range of imprisonment for each inmate, based on severity of sentence and prior criminal record, and create a presumption in favor of parole once the minimum

term has been served unless certain specified aspects of an inmate's record are found unsatisfactory. See Rules and Regulations, New York State Division of Parole, §§ 8005.10, 810.10. Plaintiffs have advised the court that they are satisfied that the new parole statute is sufficiently structured to meet the objectives of the lawsuit. (Letter of plaintiffs' counsel, May 15, 1979; Memorandum in Support of Plaintiffs' Motion, p. 21) Indeed, they contend that this suit was the catalyst for the legislative reform and that therefore they should be deemed "prevailing parties" entitled, under 42 U.S.C. § 1988, to an award of attorney's fees.

Several factors are said to establish that this action provided a "necessary and important" impetus in bringing about the present state of the law.[1] See *Nadeau v. Helgemoe*, 581 F.2d 275, 281 (1st Cir. 1978). Foremost among them is the prominent role of plaintiffs' counsel in the parole reform movement in this state. For example, counsel has acted as the director of a private research group which wrote a major study on parole reform; testified before official committees of the New York Assembly and Senate on parole bills; and has had numerous contacts with successive chairmen of the New York Parole Board on the subject of reform.

Plaintiffs also point to the publicity generated by this action, including a lengthy newspaper editorial, and several programs on local television as evidence of the significance of the lawsuit. They further rely on the coinciding of important developments in the lawsuit with the emergence of the legislative reform, arguing that "all efforts at parole reform were resolutely opposed until this court's opinion [on the motion to dismiss] exposed the constitutional vulnerability of the old statute." (Memorandum in Support of Plaintiffs' Motion, p. 33)

The State flatly rejects the notion that the lawsuit played a significant role in bringing about the new parole statute. Ed-

---

1. The facts relied on by plaintiffs are set out generally in their memorandum of law. A brief affidavit submitted by counsel attests to the truth of these facts. (Affidavit of David Rudenstine, December 22, 1978).

ward R. Hammock, who became Chairman of New York's Board of Parole in September of 1976 and chief executive officer of the newly created State Division of Parole in January of 1978, states that the development by the Federal Parole Commission of parole decision-making guidelines in the early 1970s provided the impetus for New York State's research in the area of parole reform. Hammock asserts that, as far back as the fall of 1975, prior to this court's ruling on the motion to dismiss, the Department of Correctional Services was preparing a grant application for federal funds to develop new parole guidelines for New York State. (Affidavit of February 8, 1979, ¶ 9) He further represents that the change in law was not motivated by a sense that the prior statute was unconstitutional (*id.* ¶ 11), and that plaintiffs' counsel played no part in the formulation of the parole guidelines or the enactment of the new law (*id.* ¶¶ 7–8).

However, even if it be assumed that the influence of the litigation on the legislative reform may have been more significant than the State's broad denials suggest, the evidence of record is at best inconclusive on this point. The burden of establishing that an individual lawsuit was responsible for sweeping legislative reform in an area of such widespread concern as parole must be considered extremely heavy and, on the basis of this conflicting evidence, we conclude that the burden has not been met.

A further obstacle toward relief is the lack of precedent for a fee award under the Civil Rights Attorney's Fees Awards Act on the theory presented here. Although the legislative history of 42 U.S.C. § 1988 indicates that the term "prevailing party" is to be read broadly to include litigations which end in a consent decree, see *Nadeau v. Helgemoe, supra,* 581 F.2d 275, or an out-of-court settlement, see *Parker v. Matthews,* 411 F.Supp. 1059 (D.D.C.1976), none of the cases cited in the House or Senate Reports

involves a fee award in the context of such remote and extra-judicial resolution of a lawsuit as legislative preemption. See 1976 U.S.Code Cong. & Admin.News, pp. 5908, 5912–13 (Senate Report); Civil Rights Attorney's Fees Awards Act of 1976 (Pub.L. 94–559, S. 22780) Source Book, p. 215 (House Report) (as cited in plaintiffs' memorandum).

Plaintiffs rely on two recent decisions in which awards were made to litigants under the Attorney's Fees Awards Act despite legislative enactments which mooted their claims. *Inmates of Nebraska Penal and Correctional Complex v. Greenholtz,* 567 F.2d 1381 (8th Cir. 1977), *rev'd on other grounds,* —— U.S. ——, 99 S.Ct. 2100, 60 L.Ed.2d 668 (U.S.1979); *Armstrong v. Reed,* 462 F.Supp. 496 (N.D.Miss.1978). However, *Greenholtz* is dubious support for plaintiffs' position since there the court expressly refused to grant counsel fees, limiting its award to $125.06 in court costs. 567 F.2d 1381, 1384. Moreover, in both *Greenholtz* and *Armstrong,* the award to plaintiffs was based on a finding that the complaint stated a meritorious claim and not, as proposed here, on the conclusion that plaintiffs were responsible for the legislative reform. *Greenholtz, supra,* 567 F.2d 1381, 1384; *Armstrong, supra,* at 499.[2]

In light of the Supreme Court's recent reversal of the holding on the merits in *Greenholtz,* there is a substantial question as to whether the complaint here can now be considered to state a valid claim. The Court held in *Greenholtz* that Nebraska's parole statute, which establishes a presumption in favor of parole similar to that contained in the revised New York law, entitled inmates in that state to certain due process protections. However, the Court warned that not every parole statute creates a constitutionally protected interest in parole (—— U.S. ——, ——, 99 S.Ct. 2100, 60 L.Ed.2d 668) and, in language especially pertinent to this case, stated that:

**2.** In *Armstrong v. Reed,* plaintiffs sued to bar payment of tuition and transportation expenses from a fund maintained on behalf of children of state employees to private segregated schools in Mississippi. In 1975, the state legislature amended the provision governing administration of the fund to limit such payments to public educational institutions. The court subsequently granted plaintiffs counsel fees in the amount of $8,000.

"to insure that the state-created parole system serves the public interest purposes of rehabilitation and deterrence, *the state may be specific or general in defining the conditions for release and the factors that should be considered by the parole authority.*" *Id.* at ——, 99 S.Ct. at 2104 (emphasis added; footnote omitted).

Although it is unnecessary to decide the question, this strong language casts considerable doubt on the validity of plaintiffs' complaint.

For the reasons stated above, plaintiffs' motion for attorney's fees is denied. The complaint is dismissed as moot on consent of both sides.

It is so ordered.