Julia ROBINSON, Willie D. Rutledge, Willie James Brown, Nancy Scott, Otis Curry, George Copeland, Gloria A. Brown, individually and on behalf of all those similarly situated; and Harris County Civil League, Plaintiffs-Appellants,

v.

William H. KIMBROUGH, James McMichael, Homer A. Page, H. S. Taylor, Steve M. Waddle, individually and as Jury Commissioners of Harris County, Georgia, and all their agents, employees and successors in interest, Defendants-Appellees.

No. 78–2237.

United States Court of Appeals, Fifth Circuit.

Aug. 3, 1981.

Previous opinion, 5 Cir., 620 F.2d 468, withdrawn and vacated.

Laughlin McDonald, Neil Bradley, Christopher Coates, Atlanta, Ga., for plaintiffs-appellants.

Champion & Champion, F. L. Champion, Jr., Columbus, Ga., for defendants-appellees.

Before WISDOM, POLITZ and SAM D. JOHNSON, Circuit Judges.

SAM D. JOHNSON, Circuit Judge:

Our previous opinion, reported at 620 F.2d 468 (5th Cir. 1980), is withdrawn and vacated and the following opinion is substituted in its place:

This is a jury discrimination case. Following this Court's decision in *Robinson v. Kimbrough*, 558 F.2d 773 (5th Cir. 1977) (en banc), plaintiffs moved in the district court for an award of attorneys' fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988.[1] The district court denied the motion, and plaintiffs appeal. Finding that the district court applied an incorrect test in evaluating plaintiffs' claim for attorneys' fees, we reverse and remand for further proceedings consistent herewith.

I.

A. *Initial Proceedings in the District Court*

The Harris County Civic League and other named plaintiffs filed a complaint on March 8, 1974, seeking revision of the grand jury and traverse jury lists of Harris County, Georgia. Defendants were sued individually and in their official capacity as jury commissioners of Harris County. Georgia law obligated the jury commissioners to compile and revise the jury lists at least biennially, and the lists so compiled served as the source for the names of county citizens to be summoned for duty on both the grand and petit juries. Ga.Code Ann. § 59–106.

Before the complaint was filed in 1974, defendants had taken little or no action to remedy the low percentages of blacks and women on the county jury lists. In 1974 the population of Harris County was approximately forty percent to forty-five percent black and approximately fifty percent female. Defendants conceded that from 1969 to 1974 the percentages on the jury lists for blacks was approximately ten percent to fifteen percent and for women was approximately zero percent to two percent. Despite these statistics, the jury commissioners stated that they were unaware of any constitutional defects in the jury

1. The Act provides that:
 In any action or proceeding to enforce a provision of §§ 1977, 1978, 1979, 1980, and 1981 of the Revised Statutes [42 U.S.C. §§ 1981–1983, 1985, 1986], title IX of Public Law 92–318 [20 U.S.C. §§ 1681 *et seq.*], or in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code [26 U.S.C. §§ 1 *et seq.*], or title VI of the Civil Rights Act of 1964 [42 U.S.C. §§ 2000d *et seq.*], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."
 Pub.L.No.94–559, § 2, 90 Stat. 2641, 42 U.S.C.A. § 1988.

lists before plaintiffs brought their jury discrimination action.[2]

In their complaint, plaintiffs sought relief from several separate but related violations of their constitutional rights. First, plaintiffs claimed that the jury commissioners arbitrarily and systematically excluded blacks and women from the jury lists. Second, they attacked the constitutionality of those sections of the Georgia Code that permitted differential treatment of women with regard to jury service. Ga.Code Ann. §§ 59–112(b), 59–112(d), 59–124, and 79–207. Third, plaintiffs questioned the constitutionality of the methods used by the jury commissioners to select names for the jury lists. As relief, plaintiffs asked the district court to declare the state statutes invalid and to order the jury commissioners to remedy the underrepresentation of blacks and women on the jury lists.

In April 1974, one month after plaintiffs filed their complaint, the jury commissioners asked a Harris County judge to exercise his authority under section 59–106 to order the commissioners to recompile the jury lists for the purpose of obtaining a more representative cross section of the citizens of Harris County. The commissioners made this request despite the fact that they had revised the lists less than a year before to meet the biennial requirement. The county judge granted the jury commissioners' request for an irregularly scheduled revision

of the lists, and pursuant to his order, the commissioners promptly revised the lists.

The results of the extraordinary revision were submitted to the district court on May 1, 1974. The new lists showed a remarkable increase on the traverse jury lists of blacks to 34.01 percent and of women to 44.97 percent, and a similar increase on the grand jury lists of blacks to 28.40 percent and of women to 34.22 percent. Upon receipt of these results, the district court approved the revised lists, held that plaintiffs' challenges to the Georgia jury selection laws failed to raise a substantial constitutional question, and dismissed plaintiffs' complaint. Plaintiffs then appealed to this Court.

On October 22, 1976, almost two years after plaintiffs filed their appeal from the district court's December 1974 order dismissing their complaint, a panel of this Court issued its opinion. *Robinson v. Kimbrough*, 540 F.2d 1264 (5th Cir. 1976). During that interval, the Georgia Legislature modified sections 59–112(d) and 79–207 and repealed section 59–124 to delete the privilege of women to opt out of jury service upon request. Ga. Acts 1975, pp. 779–80. This legislation became effective in April 1975, several months after the Supreme Court issued on January 21, 1975 its decision in *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).[3]

Before the panel issued its opinion, the jury commissioners in 1975 again revised

---

**2.** This Court will not dwell on the jury commissioners' objective or subjective knowledge. Their conduct and motive, whether in good or bad faith, are irrelevant for purposes of recovery of attorneys' fees against the jury commissioners in their official capacity. *Owen v. City of Independence*, 445 U.S. 622, 650, 100 S.Ct. 1398, 1415, 63 L.Ed.2d 673 (1980); *Johnson v. Mississippi*, 606 F.2d 635, 637 (5th Cir. 1979). There are no issues on this appeal concerning defendants' individual liability or their right to a qualified immunity defense. During oral argument, plaintiffs' attorney indicated that he was not confident that the record at this point contained sufficient evidence for this Court to decide whether defendants' conduct justified an award against defendants in their individual capacity. Since there are no findings by the trial court on the availability of the affirmative defense of qualified immunity, this Court declines to decide the issue in the first instance

without the assistance of the district court's conclusions. Fed.R.Civ.P. 52(a); *Universal Amusement Co. v. Vance*, 559 F.2d 1286, 1300–01 (5th Cir. 1977), *adopted in part*, 587 F.2d 176–77 (5th Cir. 1978) (en banc).

**3.** In *Taylor*, the Supreme Court held unconstitutional a state statute that automatically excluded from jury lists women that failed to opt in by previously filing a written request for jury service. At the time of the Supreme Court's opinion, five states, including Georgia still permitted women to opt out upon request after their names were placed on the jury lists. It was not until *Duren v. Missouri*, 439 U.S. 357, 359, 99 S.Ct. 664, 666 n.4, 58 L.Ed.2d 579 (1979), that the Supreme Court declared that states could not constitutionally permit all women to opt out from jury duty solely on the basis of their sex.

the composition of the county jury lists.[4] The results of the 1975 recomposition were announced to the panel of this Court during oral argument. The parties thereafter stipulated to the results of the 1975 revision and the stipulation was filed as part of the record on the first appeal. The 1975 revised figures revealed an increase in the percentages of blacks of approximately five-tenths of one percent and that of women of under five-tenths of one percent. This increase, although tangible, was relatively insignificant when compared to that previously obtained.

The panel took into consideration the 1975 recomposition of the jury lists and the 1975 changes in the Georgia statutes. On the basis of the changes in state law, the panel held that plaintiffs' challenge to the constitutionality of sections 59–112(d), 59–124, and 79–207 was moot. The panel also concluded that the 1975 revisions to the jury lists showed "that the racial composition of the jury lists ... is within constitutional limits [and] ... that the methods by which the commissioners select names for the jury lists are within constitutional bounds." 540 F.2d at 1265. Based upon the Supreme Court's decision in *Taylor v. Louisiana*, however, the panel held that plaintiffs' challenge to section 59–112(b), the Georgia statutory provision that permitted state judges to excuse from jury duty housewives with children fourteen years of age or younger, was substantial. Consequently, the panel reversed the district court's decision to dismiss plaintiffs' attack on section 59–112(b) and remanded to the district court for further consideration of the constitutionality of section 59–112(b).

Following the panel's decision, the first appeal was heard and considered by this Court sitting en banc. *Robinson v. Kimbrough*, 558 F.2d 773 (5th Cir. 1977) (en banc). The en banc opinion upheld that portion of the panel's opinion holding that the 1975 revised lists were within constitutional bounds and declaring moot plaintiffs' challenges to the constitutionality of sections 59–112(d), 59–124, and 79–207 of the

Georgia statutes. The en banc opinion, however, reversed that part of the panel opinion remanding the case to the district court for consideration of the constitutionality of section 59–112(b). The Court reasoned that because plaintiffs had failed to name as defendants the state judges who were charged with the statutory duty to handle excuses of women with children under fourteen years of age, plaintiffs had sued the wrong defendants on the section 59–112(b) claim. This determination also necessarily settled plaintiffs' request for a three-judge court, since it eliminated the only remaining issue from the case. Consequently, as a result of their suit, plaintiffs never received any formal judicial relief in the form of an injunction, temporary restraining order or court-approved settlement, and never received an express admission by defendants that either their actions or the lists were unconstitutional.

### B. *Proceedings in the District Court Upon Remand*

Following this Court's en banc decision in the first appeal, plaintiffs moved in the district court for an award of attorneys' fees pursuant to the Awards Act. In two separate motions, plaintiffs requested fees and costs for work at the trial and appellate levels, including a request for time and effort spent or to be spent on the issue of attorneys' fees. The district court denied plaintiffs' request for attorneys' fees and costs, and in a memorandum opinion and accompanying order dated April 19, 1978, offered three grounds for its decision.

First, the district court opined that this Court's decision in *Rainey v. Jackson State College*, 551 F.2d 672 (5th Cir. 1977), did not control the case before it, thereby strongly intimating that plaintiffs' suit was not pending on October 19, 1976, the effective date of the Awards Act. Second, the district court referred to this Court's previous rulings, and found that an award would be contrary to the determination made by this Court on the first appeal:

4. As noted *supra*, the Georgia statutes required that the jury lists be reconstituted biennially.

Nothing in the opinion of the Court of Appeals suggests that the Plaintiffs are entitled to an award of attorneys fees or costs. Indeed, recognizing that the Defendants (Appellees) were the prevailing parties in the litigation, the Court of Appeals directed *that the Plaintiffs (Appellants) pay to the Defendants (Appellees) their costs on appeal* . . . . (emphasis in original). Finally, the district court stated that an award of attorneys' fees would result in a manifest injustice to defendants, who already had incurred substantial expense in their defense of plaintiffs' suit.

## II.

### A. *Power to Address Issue of Attorneys' Fees On This Appeal*

■ On appeal, defendants first question plaintiffs' right to assert a claim for attorneys' fees under the Awards Act. Defendants point out that following the decision of this Court sitting en banc, the Clerk of this Court taxed the costs of the first appeal against plaintiffs. Based upon this fact, defendants argue, and the district court held, that the Clerk was acting on behalf of this Court and that his action evinces a determination by this Court that plaintiffs are not entitled to attorneys' fees under the Awards Act. This argument cannot be sustained. Only a *Court* possesses the authority to award or deny attorneys' fees to a prevailing party. *See Knighton v. Watkins,* 616 F.2d 795, 798 n.2 (5th Cir. 1980).

■ Examination of the record reveals that, prior to the district court's decision from which plaintiffs now appeal, at no time did any court address the merits of plaintiffs' claim for attorneys' fees. Although plaintiffs' request for an award of attorneys' fees was included in the complaint, the district court dismissed that complaint without any comment on the request for attorneys' fees. Similarly, on the initial appeal to this Court, both the panel and the Court sitting en banc ruled only upon plaintiffs' substantive claims of jury discrimination: whereas the panel opinion indicated that "costs are taxed against the appellees," but made no mention of plaintiffs' prayer for attorneys' fees,[5] the en banc opinion likewise made no reference to attorneys' fees.[6] Although the judgment of the en banc Court provides that "[i]t is further ordered that plaintiffs-appellants pay to the defendants-appellees, the costs on appeal to be taxed by the Clerk of this Court," this recitation cannot be construed as a judicial directive pertaining to attorneys' fees under the Awards Act. Rule 39 of the Federal Rules of Appellate Procedure, the statutory authority for the order on costs, refers only to the usual costs of appeal. *See Knighton v. Watkins,* 616 F.2d at 797–98.[7]

■ The panel opinion on plaintiffs' first appeal was issued October 22, 1976, three days after the effective date of the Awards Act. The Act constituted a material intervening change in the law on attorneys' fees. Consequently, plaintiffs had their first op-

5. The panel opinion recites:
AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings. Costs are taxed against the appellees.
540 F.2d at 1266.

6. The language of the en banc opinion recites:
"[T]he opinion and judgment of the district court are AFFIRMED in part and VACATED in part. The opinion of the panel is VACATED in part."
558 F.2d at 774–75.

7. In compliance with the order, the Clerk of this Court assessed court costs of $149.36 against plaintiffs. Rule 39 permits the taxation of the usual costs of an appeal such as the expenses of docketing an appeal or preparing and filing briefs and records. Fed.R.App.P. 39(c), (e); *see also* 28 U.S.C.A. § 1920; 9 Moore's Federal Practice ¶ 239.02 (1979). The record reveals that the attorney for the defendants filed a bill of costs which made no mention of attorneys' fees. This bill of costs included a request for recovery of the usual costs of appeal, and the $149.36 assessed against plaintiffs covered the costs of printing the defendants' appellate briefs. Plaintiffs did not file a timely objection to the defendants' request for recovery of these specific costs. *See* Fed.R.App.P. 39(d); *Delta Air Lines, Inc. v. Civil Aeronautics Board,* 505 F.2d 386, 387–88 (D.C.Cir.1974) (a motion to tax specific costs can be countered by opposing motion). Thus, no reason exists at this late date to amend the order taxing $149.36 in costs against plaintiffs.

portunity to present to any court their request for attorneys' fees under the Act only after this Court's *en banc* decision in 1977. *See Morrow v. Dilliard*, 580 F.2d at 1297 (the "law of the case" did not pretermit reconsideration of attorneys' fees under the Act); 1B Moore's Federal Practice ¶ .404. Inasmuch as motions for attorneys' fees under the Awards Act are not subject to the ten-day limitation on motions to alter or amend a judgment, *Knighton v. Watkins*, 616 F.2d at 797; Fed.R.Civ.P. 59(e), and plaintiffs promptly moved the district court for an award of attorneys' fees following this Court's *en banc* decision, they are not precluded from asserting their claim under the Awards Act at this time. *See also Standard Oil of California v. United States*, 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976).

B. *Issue of Attorneys' Fees On This Appeal*

 As noted *supra*, the Awards Act became effective October 19, 1976. Decisions of this and other Courts, as well as the legislative history of the Act, establish that the award provisions of the Act apply to all cases pending on its effective date, and that prevailing plaintiffs in civil rights actions subject to the Act are entitled to attorneys' fees unless special circumstances would render an award unjust.[8] Consequently, three issues remain to be determined: (1) was plaintiffs' civil rights action pending on October 19, 1976, the effective date of the Awards Act; (2) were plaintiffs prevailing parties for purposes of the award provisions of the Act; and (3) do special circumstances obtain that would render an award of attorneys' fees unjust.

1. Pendency of Plaintiffs' Civil Rights Action On October 19, 1976

 The record reveals that on the effective date of the Awards Act plaintiffs' case was actively before this Court with several substantive issues still unsettled. Among the issues to be determined were the constitutionality of both the composition of the jury lists and the commissioners' methods of selecting names for those lists. This Court has held that a case is pending for purposes of an award of attorneys' fees under the Act if the only issue remaining is that of attorneys' fees. *Corpus v. Estelle*, 605 F.2d 175 (5th Cir. 1979), *cert. denied*, 445 U.S. 919, 100 S.Ct. 1284, 63 L.Ed.2d 605 (1980); *Rainey v. Jackson State College, supra*, 551 F.2d 672.

Defendants argue that plaintiffs' case was not actively pending on October 19, 1976, and cite as support for their argument *Escamilla v. Santos*, 591 F.2d 1086 (5th Cir. 1979), *Henry v. Clarksdale Municipal Separate School District*, 579 F.2d 916 (5th Cir. 1978) (fees sought under 20 U.S.C.A. § 617), and *Peacock v. Drew Municipal Separate School District*, 433 F.Supp. 1072 (N.D.Miss. 1977). In those cases, however, the courts had finally disposed of all of the issues, including that of attorneys' fees, prior to the effective dates of the statutes involved. At most, the only remaining issues pending before the court in the cases cited by defendants were supplemental proceedings to effectuate a prior final judgment. In contrast, the issues pending before this Court in the first appeal of the case *sub judice* involved plaintiffs' constitutional challenges to the Georgia statutes and to the commissioners' conduct—the central issues in the case.

Similarly, that plaintiffs did not obtain formal relief on any of their claims that were still pending on the effective date of the Awards Act is not determinative: It is beyond peradventure that the Act applies to pending *cases*, not pending issues. H.R. Rep.No.94–1558 p. 4 n.6 (1976). The fact that this Court ultimately determined that some of plaintiffs' claims were moot, while others were unmeritorious, although rele-

---

**8.** S.Rep.No.94–1011, 94th Cong., 2d Sess., *reprinted in* [1976] *U.S.Code Cong. & Admin. News*, p. 5908 *et. seq.*; H.Rep.No.94–1558, 94th Cong., 2d Sess. 4–7 (1976); *Hutto v. Finney*, 437 U.S. 678, 694–95, 98 S.Ct. 2565, 2575, 57 L.Ed.2d 522 (1978); *Johnson v. Mississippi*, 606 F.2d 635 (5th Cir. 1979); *Rainey v. Jackson State College*, 551 F.2d 672 (5th Cir. 1977), *aff'd and modified on rehearing*, 591 F.2d 1002 (1979).

vant to the amount of fees properly award-able, simply does not bear on the question whether the case was pending on the effective date of the Awards Act. Unquestionably it was.

### 2. The "Prevailing Party" Issue

 For the reasons noted *supra*, to the extent that the district court interpreted this Court's earlier en banc decision as precluding plaintiffs' status as prevailing parties, it was in error. Similarly, the district court's implicit reliance upon plaintiffs' failure to obtain formal judicial relief as a ground for automatically disqualifying plaintiffs from obtaining attorneys' fees under the Awards Act also was misplaced. The Act's legislative history evinces a clear Congressional intent to award attorneys' fees even when no formal judicial relief is obtained and no final judicial determination is made on any constitutional claim. The Senate Report explains that "parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief." S.Rep.No.94–1011 at 5, *supra*, [1976] U.S. Code Cong. & Admin.News at 5912. Similarly, the House Report emphasizes that courts should, if possible, avoid unnecessary constitutional adjudication by initially addressing nonconstitutional issues. If a claim is substantial and decided favorably to plaintiffs, an award for attorneys' fees may be allowed even though the court declines to grant formal relief on the constitutional issues. H.R.Rep.No.1558, 94th Cong., 2d Sess. 4 n.7 (1976).

This Court's recent decisions have recognized this legislative intent, and it has been stated that plaintiffs are entitled to attorneys' fees in cases in which constitutional claims are mooted by defendants' remedial action subsequent to the filing of the lawsuit. *E. g., Iranian Students Association v. Edwards*, 604 F.2d 352, 353 (5th Cir. 1979) (relief obtained through consent judgment subsequent to suit); *Criterion Club of Alba-*

*ny v. Board of Commissioners of Dougherty County*, 594 F.2d 118 at 120 (corrective legislation, in compliance with parties' agreement, enacted after lawsuit initiated). Plaintiffs in *Iranian Students* and *Criterion Club* never obtained a final judgment or permanent judicial relief. Nevertheless, this Court held that fees were not precluded if plaintiffs' lawsuit was a catalyst motivating defendants to provide the primary relief sought in a manner desired by litigation.

In *Brown v. Culpepper*, 559 F.2d 274 (5th Cir. 1977), plaintiffs' lawsuit resulted in defendants' decision to voluntarily revise the jury lists of Mitchell County, Georgia to increase the percentages of blacks and women. Plaintiffs obtained a temporary injunction and defendants admitted their liability in a judicial hearing.[9] Despite judicial action in the form of a temporary injunction and defendants' willingness to admit error, the focus of this Court's decision in that case was the substance of the relief—revision of the lists—and the fact that the lawsuit was a necessary factor in obtaining that relief. 559 F.2d at 275. This Court granted an award of attorneys' fees in *Brown v. Culpepper* because the chronology of events revealed that plaintiffs' lawsuit had vindicated the plaintiffs' civil rights by activating defendants to modify their behavior.

Other federal appellate courts likewise have held that recovery of attorneys' fees under the Awards Act is not dependent upon plaintiffs' ability to secure formal judicial relief by way of injunction or otherwise. Rather, these opinions have focused upon the type of relief obtained from the defendants as a result of the lawsuit. *E. g., Ross v. Horn*, 598 F.2d 1312, 1322 (3d Cir. 1979) (focus is not on the form of the final judgment, but on the substance and cause of the relief); *Hughes v. Repko*, 578 F.2d 483, 487 (3d Cir. 1978) (plaintiff prevails if he essentially succeeds in obtaining relief sought). Common to these decisions is the recognition that plaintiffs may recover at-

---

**9.** The fact that defendants in the instant case have never expressly admitted liability is of little consequence since defendants rarely ad-

mit responsibility in suits terminated by consent judgments or voluntary action.

torneys' fees if their lawsuit is a substantial factor or a significant catalyst in motivating the defendants to end their unconstitutional behavior. *See, e. g., Nadeau v. Helgemoe*, 581 F.2d 275, 279 (1st Cir. 1978); *International Society for Krishna Consciousness, Inc. v. Andersen*, 569 F.2d 1027 (8th Cir. 1978).

Federal district courts also have liberally construed the provisions for awards of attorneys' fees both under the Awards Act and comparable legislation. In awarding attorneys' fees to plaintiffs who have obtained significant relief by virtue of their litigation, these courts have emphasized the nature of the relief obtained, the chronology of events, and the role of the civil rights action in activating change.[10]

In the case *sub judice*, plaintiffs argue that the chronological sequence of events, including the substantive remedial changes in the composition of the jury lists both immediately after plaintiffs filed suit and during the first appeal, and defendants' submission of the lists to the district court and this Court for approval, established that defendants "voluntarily" remedied the constitutional violation only in direct response to plaintiffs' lawsuit. Consequently, plaintiffs argue, their lawsuit was the catalyst that motivated defendants to correct their unconstitutional conduct, and plaintiffs therefore are prevailing parties within the meaning of the Awards Act. In denying plaintiffs' motion for attorneys' fees,

the district court did not address this argument.

As noted *supra*, plaintiffs in *Criterion Club of Albany v. Board of Commissioners of Dougherty County*, 594 F.2d 118 (5th Cir. 1979) obtained relief in the form of the enactment of corrective legislation. Because the district court had made no findings on whether plaintiffs' suit actually precipitated the enactment of the remedial legislation, however, this Court remanded the case to the district court for the purpose of determining whether "the result obtained was a consequence of the filing of the suit." 594 F.2d at 120. Similarly, in the case *sub judice*, plaintiffs obtained no formal judicial relief, by injunction or otherwise, and the district court made no findings whether the remedial actions taken by defendants were "a consequence of the filing of the suit." In the absence of such findings by the district court, we decline the invitation to determine at this time whether plaintiffs are prevailing parties within the meaning of the Awards Act. For the same reason, we need not address defendants' argument that even if plaintiffs are prevailing parties with respect to certain of their claims, they should not be allowed to recover attorneys fees for the pursuit of claims on which they obtained no relief, judicial or otherwise. It is sufficient to note that although a district court should not divide a case into "issue parcels" for purposes of determining whether plaintiffs are prevail-

10. *See, e. g., Westfall v. Board of Commissioners of Clayton County*, 477 F.Supp. 862, 868 (N.D.Ga.1979) (defendants modified ordinance subsequent to complaint as direct result of lawsuit in light of sequence of events); *Massachusetts Fair Share v. O'Keefe*, 476 F.Supp. 294, 297–98 (D.Mass.1979) (critical factor is outcome and defendants' denial of liability is irrelevant); *Lackey v. Bowling*, 476 F.Supp. 1111, 1113–15 (N.D.Ill.1979) (even though claims mooted by defendant's voluntary actions, lawsuit was "catalytic factor" in accomplishing objectives of litigation); *Armstrong v. Reed*, 462 F.Supp. 496, 499–500 (N.D.Miss.1978) (although voluntary compliance with amended statutes mooted plaintiffs' claims, plaintiffs entitled to fees since lawsuit accomplished its goal); *M. C. I. Concord Advisory Board v. Hall*, 457 F.Supp. 911, 913–914 (D.Mass.1978) (despite fact plaintiffs' success depended on volun-

tary, cooperative actions of defendants, lawsuit was necessary and important factor in obtaining desired relief); *NAACP v. Bell*, 448 F.Supp. 1164, 1166 (D.D.C.1978) (although defendant's voluntary modifications in policy mooted constitutional claims, plaintiffs still entitled to fees since lawsuit was the catalyst for victory); *Hartmann v. Gaffney*, 446 F.Supp. 809, 812 (D.Minn.1977) (since plaintiffs' claims were effective catalyst in achieving settlement, they were entitled to attorneys' fees); *but see Cicero v. Olgiati*, 473 F.Supp. 653, 655 (S.D.N.Y.1979) (because plaintiffs had no meritorious claim and record inconclusive on influence of lawsuit on defendants' action, plaintiffs held not entitled to fees); *Young v. Kenley*, 465 F.Supp. 1260, 1262–63 (E.D.Va.1979) (since plaintiffs' lawsuit was frivolous and defendants not legally bound to provide desired relief, court denied award of fees).

ing parties, neither is it required to award fees for plaintiffs' efforts on unmeritorious claims, and may, if appropriate, apportion fees between meritorious and unmeritorious claims. *Miller v. Carson*, 628 F.2d 346 (5th Cir. 1980); *Familias Unidas v. Briscoe*, 619 F.2d 391, 392, 405–06 (5th Cir. 1980); *Hardy v. Porter*, 613 F.2d 112, 114 (5th Cir. 1980). On remand, the parties should be allowed to submit additional evidence on this issue.

### 3. "Special Circumstances"

As noted *supra*, a district court is not required to award attorneys' fees to a prevailing party when "special circumstances" would make an award unjust. In the present case, the district court opined that even if plaintiffs are prevailing parties under the Awards Act, "to require the Defendants in this case to incur the expense of paying an attorneys fee for the benefit of the Plaintiffs in addition to the substantial expenses already incurred by the Defendants ... would result in a manifest injustice."

This Court has rejected the argument that the fact that an award of attorneys' fees against a governmental body ultimately will fall on taxpayers justifies a denial of attorneys' fees under the "special circumstances" exception. *Johnson v. Mississippi, supra*, 606 F.2d at 637. The fact that a defendant has its own attorneys' fees to pay is not such a "special circumstance" sufficient to render an award unjust. Most assuredly, nothing whatsoever is "special" about having to pay one's own attorneys' fees. The district court's decision to the contrary, therefore, was error.

For the foregoing reasons, the judgment of the district court is reversed, and the case remanded for the purpose of determining whether plaintiffs' lawsuit was a substantial factor or significant catalyst in bringing about an end to the unconstitutional underrepresentation of blacks and women in the Harris County jury lists. If the district court determines that plaintiffs' lawsuit was such a factor, it shall fix an award in conformity with the guidelines established in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

REVERSED, VACATED, and REMANDED.