Maria Carlota GARCIA, et al.,
Plaintiffs-Appellants,

v.

Ramiro M. GUERRA, et al.,
Defendants-Appellees.

No. 83–2318.

United States Court of Appeals,
Fifth Circuit.

Oct. 29, 1984.

Rehearing and Rehearing En Banc
Denied Dec. 10, 1984.

Raul Noriega, TX Rural Legal Aid, Inc., San Antonio, Tex., Jose R. Rodriguez, Director, Farm Worker Div., Laurence E. Norton, II, Weslaco, Tex., for plaintiffs-appellants.

George P. Powell, McAllen, Tex., for Progreso.

Robert L. Galligan, Weslaco, Tex., for Weslaco.

Travis Hiester, Michael Mills, McAllen, Tex., for Hidalgo.

Before RANDALL, TATE and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Appellants appeal from the district court's denial of their request for attorney's fees made under the Voting Rights Act of 1965, 42 U.S.C. § 1973*l*(e) and the Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988.[1] Finding that appellants meet the requirements of a "prevailing party" set out in *Williams v. Leatherbury*, 672 F.2d 549 (5th Cir.1982), as against appellees Hidalgo County and Ramiro M. Guerra, but not as against the appellee school districts, we affirm in part and reverse and remand in part.

## I. FACTS

Appellants, Mexican-American farmworkers, filed this action pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c, against Hidalgo County, Texas, Ramiro M. Guerra, County Judge of Hidalgo County, and the Progreso and Weslaco Independent School Districts.[2] They sought to enjoin the holding of an election scheduled for August 14, 1982, a time when migrant farmworkers who were registered to vote in Hidalgo County were away on their yearly migration. These farm workers are virtually all Hispanic. The purpose of the election was to decide if the Progreso School District, a district predominantly composed of Hispanic students, should be consolidated with the adjacent Weslaco School District, a district predominantly composed of non-Hispanic white students.

Regular elections involving the school districts in Hidalgo County had traditionally been held in April pursuant to article 2.01b(a) of the Texas Election Code. Article 2.01b(a) provides four dates on which the State's political subdivisions may hold elections. These dates are the third Saturday in January, the first Saturday in April, the second Saturday in August, and the first Tuesday after the first Monday in November. Prior to enactment of the Texas statute, all four dates were precleared by the United States Department of Justice pursuant to Section 5 of the Voting Rights Act. Appellants' action sought to enjoin the holding of the August election on the grounds that the appellees had failed to submit the April-to-August change in election dates to the United States Attorney General pursuant to Section 5 of the Voting Rights Act. In response, appellees maintained that since the August date had already been precleared, they were not required to resubmit the date for further preclearance.

After a hearing on July 26, 1982, the district court issued a temporary restraining order, restraining appellees from holding the consolidation election until a three-judge panel could be convened to decide the issue. Before the three-judge panel had an

---

**1.** Section 1973*l*(e) provides:

In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Section 1988, provides in pertinent part:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

**2.** Also named as defendants were Hidalgo County Commissioners Norberto Salinas, Charles Curtis, J.R. Ponce and Ramiro Cavazos; Weslaco Independent School District Trustees Richard Vaughn, Jr., Dr. Roberto Perez, J.J. Valli, Domingo Sepulveda, Robert McAllen, Gloria Llewellyn and Stephany Wiley; Weslaco Independent School District Superintendent Tony Rico; Progreso Independent School District Trustees Rito Valdez, Apolinar Ramirez, R. Rene E. Luna, Eligio Castillo, O.D. Emery, Gilbert Rodriguez, and Arturo Valdez; and Progreso Independent School District Superintendent Jose Sanchez. For simplicity, all defendants for Hidalgo County including County Judge Guerra, will be referred to as "the County." Any reference to "the school districts" will include the above-named trustees and superintendents of the Weslaco and Progreso Independent School Districts.

opportunity to hear the case, Hidalgo County, following the suggestion of the district court judge, voluntarily submitted a preclearance application to the United States Department of Justice to preclear a date for an election on the consolidation issue. After delays with the Justice Department, the election was precleared for April 2, 1983. The election was held on that date, and the school district consolidation was defeated.

Following the consolidation election, appellants moved for attorney's fees and costs asserting that since appellants had received the primary relief sought, i.e., a change from the scheduled August election date and submission of a later date for preclearance, they were prevailing parties. The district court denied appellants' motion, holding that "[t]he voluntary submission of the election for preclearance by Defendants, while rendering moot the issues involved in this action, did not cause the Plaintiffs to become prevailing parties in the eyes of the Court." Appellants challenge this decision.

## II. THE LEATHERBURY TEST

In *Williams v. Leatherbury, supra,* 672 F.2d at 550, we acknowledged that "[v]ictory by judgment or an opponent's concession is not essential to identification of the 'prevailing party' entitled to recovery of an attorney's fee under the Act." We stated that if a defendant unilaterally undertakes action that moots the controversy, a plaintiff nevertheless may recover attorney's fees if he can show (1) a causal connection between the filing of the suit and the defendant's action; and (2) that the defendant's conduct was required by law. *Id.* at 551; *Wooten v. Housing Authority of City of Dallas,* 723 F.2d 390, 391 (5th Cir.1984);

*Posada v. Lamb County, Texas,* 716 F.2d 1066, 1071 (5th Cir.1983).

■ In defining "causal connection," we stated that the plaintiff's suit must have been " 'a substantial factor or a significant catalyst in motivating the defendants to end their unconstitutional behavior.' " *Leatherbury,* 672 F.2d at 551, *quoting Robinson v. Kimbrough,* 652 F.2d 458, 466 (5th Cir.1981). There is no serious question that appellants have met the requirements of the first prong of the *Leatherbury* test. It is clear from the record that had appellants not filed this lawsuit, the County would have held the consolidation election on August 14, 1982, without seeking preclearance of the April-to-August date change. In fact, absentee balloting had already commenced approximately four hours before issuance of the TRO.

The difficult question is whether the action taken by the appellees was required by law,[3] the second prong of the *Leatherbury* test. In answering this question, we do not decide definitively whether preclearance of the April-to-August change was required by law. A definitive answer would require a decision on the merits of appellants' claim. Such a decision properly should be made by a three-judge panel pursuant to Section 5. Hence, if a definitive answer were required, we would have to remand the case for a decision by a three-judge panel. Such action would totally obviate the time and financial benefits that flow from a resolution of a lawsuit prior to a full blown hearing on the merits.

■ The second prong of the *Leatherbury* test, consequently, does not require appellants to show that they would have won on the merits. Rather, as the *Leath-*

3. For practical purposes, we recognize that the action actually taken by the appellees which mooted the controversy, i.e., getting preclearance of the April 1983 election date, was in all likelihood not required by law. The April date was the regular election date and therefore not a "change" in voting procedure. The issue of the August date became moot due to the court's issuance of the TRO and its further suggestion that the parties honor the TRO (which actually

expired several days before the election date) until the hearing by the three-judge panel. We nonetheless focus on the question of whether appellees would have been required to submit the August date for preclearance since that was the substance of appellants' complaint below and because we acknowledge that but for the passage of time, that would be the issue we would have to decide.

*erbury* case said, appellants need only show that the action taken by the appellees was "not a wholly gratuitous response to an action that in itself was frivolous or groundless." 672 F.2d at 551. A claim is not frivolous if it is arguably supported by case or statutory law. It is with this standard in mind that we proceed to analyze whether there are reasonable grounds to believe that the August date needed to be submitted for preclearance and whether the appellees' actions in not holding the election in August and in submitting a later date for preclearance were therefore not merely "gratuitous."

The district court was not convinced that further preclearance of the August election date was required by law. The court stated:

> The consolidation election being challenged by this action was designated to be held on a date that was both precleared by the United States Department of Justice and approved by the Texas Legislature. Furthermore, the election was called by Ramiro M. Guerra, County Judge of Hidalgo County, Texas, as required by Section 19.232 of the Texas Election Code.

For the reasons discussed in Part IV *infra*, we disagree with the district court's conclusion.

## III. THE SCHOOL DISTRICTS

Sections 19.232 and 19.233 of the Texas Education Code require that upon petition by a requisite number of qualified voters in adjacent school districts, the county judge must call an election to allow voters in the school districts to decide if they desire a consolidation of the school districts.

■ The school districts correctly point out that §§ 19.232 and 19.233 impose no obligations or duties with regard to election activities upon the school districts which are the subject of a consolidation election. Hence, we conclude that the district court correctly denied appellants' recovery of attorney's fees as against the school districts since they were not required by law to submit the election date for preclearance or to do anything else in connection with the consolidation election.

## IV. THE COUNTY

■ Article 2.01b of the Texas Election Code does not address the question of whether a change of the type involved in this case should have been submitted for preclearance. We therefore look to Section 5 of the Voting Rights Act, its implementing regulations, and the relevant case law to determine whether the date change should have been submitted for preclearance.

■ Section 5 of the Voting Rights Act of 1965, as amended in 1975, provides that whenever a State or political subdivision covered by the Act shall enact or seek to administer "any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1972 . . . no person shall be denied the right to vote for failure to comply with such qualification, prerequisite, standard, practice, or procedure" unless the chief legal officer or other appropriate official of such State or subdivision has submitted the qualification, prerequisite, standard, practice, or procedure to the Attorney General of the United States "and the Attorney General has not interposed an objection within sixty days after such submission." [4]

---

**4.** Appellants do not allege, nor need we consider, whether the appellees acted with discriminatory motive or intent in making the date change. The Supreme Court instructed in *Allen v. State Board of Elections*, 393 U.S. 544, 559, 89 S.Ct. 817, 828, 22 L.Ed.2d 1 (1969) that a consideration of whether a change challenged under § 5 has a "discriminatory purpose or effect" is not a proper inquiry in determining whether a particular change is covered by § 5. The Supreme Court noted that Congress intended to treat "coverage" questions differently from "substantive discrimination" questions. The Court stressed that a determination of whether a covered change does or does not have the purpose or effect of "denying or abridging the right to vote on account of race or color" is reserved for consideration by the District Court for the District of Columbia or the Attorney General, whereas a determination of whether a change is covered by § 5 is reserved for a three-judge

The Act defines the terms "vote" and "voting" to include "all action necessary to make a vote effective in any primary; special, or general election, including, but not limited to registration, ... casting a ballot, and having such ballot counted properly and included in the appropriate totals of votes cast with respect to candidates for public or party office and propositions for which votes are received in an election." 42 U.S.C. § 1973*l* (c)(1).

■ The congressional purpose behind the enactment of § 5 was to insure that no voting procedure changes would be made by a political subdivision "that would lead to a retrogression in the position of racial minorities with respect to their effective exercise of the electoral franchise." *Beer v. United States*, 425 U.S. 130, 141, 96 S.Ct. 1357, 1364, 47 L.Ed.2d 629 (1976).

In *Allen v. State Board of Elections*, 393 U.S. 544, 566–67, 89 S.Ct. 817, 832, 22 L.Ed.2d 1 (1969), the Supreme Court held that Congress clearly intended that § 5 be given "the broadest possible scope" to reach "any state enactment which alter(s) the election law of a covered State in even a minor way." The Court pointed out that Congress expressly "chose not to include even ... minor exceptions [e.g., changing from paper ballots to voting machines] in § 5, thus indicating an intention that all changes, no matter how small, be subjected to § 5 scrutiny." *Id.* at 568, 89 S.Ct. at 833.

Relying upon *Allen*, the Court held in *Perkins v. Matthews*, 400 U.S. 379, 387, 91 S.Ct. 431, 436, 27 L.Ed.2d 476 (1971) that a change in the location of polling places constitutes a change in the voting "standard, practice or procedure" and is there-fore covered by § 5. In making this decision, the Court reviewed the types of changes which have historically been considered by the Department of Justice to be within the scope of § 5. These changes include: changes in voter qualifications in municipal elections; changes from paper ballots to voting machines; changes in the dates of municipal elections; changes in the place of registration; increases in the terms of municipal officials; and an enactment of an act requiring an oath to be taken by all voters. *Id.* at 387–89 & n. 7, 393 n. 11,[5] 91 S.Ct. at 436–437 & n. 7, 439 n. 11.

■■ Tested by the standard used by the Supreme Court in *Allen* and *Perkins*, the change challenged in this case falls within the purview of § 5. As the Supreme Court noted, "[t]he abstract right to vote means little unless the right becomes a reality at the polling place on election day." *Perkins*, 400 U.S. at 387, 91 S.Ct. at 436. The Court emphasized that this right is substantially abridged if polling places are located at distances remote from certain communities or at places where voters would be reluctant to enter because of their race. This right is similarly abridged if a person does not have prior notice that an election is to take place or if the date set for the election effectively prevents him from exercising his franchise.

■ The record shows that a significant number of registered voters in Hidalgo County are Mexican-American migrant farmworkers who migrate north annually in late April to harvest crops and return in mid September. The petition for the consolidation election was filed on July 6, 1982. Based upon the petition, appellee Guerra

panel in the local district court. *Ibid; see also, Perkins v. Matthews*, 400 U.S. 379, 383, 91 S.Ct. 431, 434, 27 L.Ed.2d 476 (1971). Since this case was resolved before it reached the three-judge panel, in order to decide the attorney's fee issue, we need only decide whether the appellants have shown that the challenged change arguably falls *within the purview of* § 5. The substantive question of discriminatory effect or purpose is not for us to decide.

5. *See also* Hearings on H.R. 6400 before Subcommittee No. 5 of the House Committee on the Judiciary, 89th Cong., 1st Sess., ser. 2, p. 62 (1965); Hearings on Voting Rights Act Extension before Subcommittee No. 5 of the House Committee on the Judiciary, 91st Cong., 1st Sess., ser. 3, pp. 308–313 (1969); Hearings on Amendments to the Voting Rights Act of 1965 before the Subcommittee on Constitutional Rights of the Senate Committee on the Judiciary 91st Cong., 1st Sess., 248 (1969).

announced on July 19, 1982, that the consolidation election would be held on August 14, 1982. In all likelihood, the migrant farmworkers who were away on their yearly migration did not even have notice that an election was to be held, much less the opportunity to return to vote in the election. Inherent in the April-to-August date change was the obvious potential for "denying or abridging the right to vote on account of race or color."

▉ While it is true that the August election date was one of the four general dates for elections pre-approved by the United States Attorney General, the established fact in this case is that abandoning the usual April date for school elections for the August date was a "change" which had the effect of depriving substantial numbers of Hispanic voters of the right to vote in the election. There is nothing in the Voting Rights Act which requires that once regular election dates are precleared, changes in elections which actually deprive voters of the right to vote because of their race are no longer of statutory concern. The law regarding "change" in 42 U.S.C. § 1973c is obviously directed at the overall statutory purpose to eliminate discrimination in voting based upon race or color. And in § 1973b(f)(2) the statute specifically forbids any "voting qualification, or prerequisite to voting, or standard, *practice* or *procedure*" which "abridges" the right to vote because of membership in "a language minority group." (emphasis added). Section 1973*l* (c)(3) defines a language minority group as including persons who are "of Spanish heritage."

These circumstances explain why there is at least some significance in the fact that where the date for an election was submitted to the Attorney General, the Attorney General did pre-clear the date. The Department of Justice might well have treated the request for pre-clearance as a routine matter in which submission was unnecessary. But note that the submission was for a date other than the August date upon which the election was originally set. We cannot assume that the Attorney General would have treated as insignificant the changing of the regular election date from April to August and the effect of the August date in view of the clear showing in the record. The inescapable fact in the record is that the August date deprived substantial numbers of Hispanic registered voters of the right to vote. Their absence from their homes at that time of year was a regular occurrence and was well-known in the community.

Finally, the County urges this Court to find that Judge Guerra, in calling for the consolidation election, was merely acting in accordance with the dictates of §§ 19.232 and 19.233 of the Texas Education Code. While it is true that the Code required Judge Guerra to call a consolidation election upon receipt of the requisite number of petition signatures, the Code did not designate a specific time period within which the election was required to be held. The presumption is that the county judge should have called for the consolidation at the next legally permissible time. It was clear at that time that an August election would deprive the migrant farmworkers of the right to participate in the election. Therefore, the judge was bound by the strictures of § 5 to submit the change for preclearance or hold the election at the regular April date.

## V. CONCLUSION

▉ In sum, we conclude that there were reasonable grounds to believe that the August election date was required to have been submitted for preclearance pursuant to § 5. Thus, by not holding the consolidation election in August, the County was not acting gratuitously; rather it was merely doing what it may well have been required by law to do. As such, we conclude that appellants satisfied the two prongs of the *Leatherbury* test and were prevailing parties against Hidalgo County. They are, therefore, entitled to attorney's fees as against the County, the County Commissioners and Judge Guerra. We reverse and remand the case to the district

**1166**

court for a determination of the appropriate fee award.

We further conclude that since the Progreso and Weslaco School Districts were not legally required to do anything in connection with the consolidation election, appellants have failed to show prevailing party status as against the school districts. We, therefore, affirm the district court's denial of attorney's fees as against these parties.

AFFIRMED IN PART;

REVERSED AND REMANDED IN PART.

RANDALL, Circuit Judge, specially concurring:

Although I concur in the result reached by the panel, I cannot join in the majority's opinion because I find it unnecessarily broad. As the majority observed, under *Williams v. Leatherbury*, 672 F.2d 549, 551 (5th Cir.1982), attorney's fees can be awarded under the prevailing party standard only if the appellants' claim is not frivolous or groundless. Thus, I agree with the court's general refusal to consider the merits of the appellant's suit to enjoin the election. Moreover, because I believe that there were "reasonable grounds" for the appellant's claim, I concur in the judgment of the court. In the course of its opinion, however, the majority quite clearly departs from the *Leatherbury* standard by regarding as "established fact" the proposition that the holding of the special election in August was itself a "change" within the ambit of section 5. In my view, this declaration by the court is both questionable and unnecessary to the holding.

The record clearly indicates that the Progreso and Weslaco School Districts had never before been the subject of a consolidation election. The election itself was a special election called by the county judge pursuant to § 19.233 to be held at the next available precleared date. The previous elections that were mentioned in the majority opinion as being held traditionally in April were all regular elections for school board trustees. Under these circumstances, it is not at all clear to me that the holding of the special consolidation election in August was a "change" from past practices. The consolidation election can be just as easily considered a one-time event which could have been set for any of the precleared dates.

In any event, the essential point here is that the panel went beyond the applicable standard in considering the merits of the issue at all. Under the *Leatherbury* standard, the panel should have held only that the appellant's claim was colorable, while intimating no opinion on its merits.