David LUCAS, et al.,

v.

**Judy TOWNSEND as President of the Bibb County Board of Education, et al.**

**Civ. A. No. 88–166–1–Mac (WDO).**

United States District Court, M.D. Georgia, Macon Division.

May 27, 1988.

Neil Bradley, Laughlin McDonald, Kathleen Wilde, Derek Alphran, American Civil Liberties Union Foundation, Inc., Atlanta, Ga., for plaintiffs.

W. Warren Plowden, Jones, Cork & Miller, Ed. S. Sell, Jr., Sell & Melton, Macon, Ga., for defendants.

OWENS, Chief Judge.

Plaintiffs in their complaint filed this 27th day of May at 2:20 P.M. contend that the Tuesday, May 31, 1988, bond referendum election to be held in Bibb County, Georgia, should be temporarily restrained by the receiving single district judge and preliminarily enjoined by the court of three judges—Circuit Judge James C. Hill, District Judge Duross Fitzpatrick and Chief District Judge Wilbur D. Owens, Jr., appointed this date by Chief Circuit Judge Paul Roney pursuant to 28 U.S.C. 2284(b)—because it is being held in violation of Section Five of the Voting Rights Act, 42 U.S.C. 1973c.

Plaintiffs' motion for a temporary restraining order came on to be heard before the receiving single judge who heard evidence and argument from plaintiffs and defendants. At the conclusion of the hearing the parties were asked if they desired a further hearing preceding the scheduled election before the court of three judges. All parties responded that if such a hearing were held, they would present nothing other than what was presented this afternoon so that it is agreeable with all for the court of three judges to decide this controversy on the basis of all that was presented to and heard by the receiving single district judge. Accordingly, the court of three judges conferred by telephone, carefully considered the contentions of the parties and decided as follows:

Section Five of the Act, 42 U.S.C.A. § 1973c, provides that whenever a covered state or political subdivision "shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964 ..." it may not utilize or implement such change until (a) it has secured a judicial determination in the U.S. District Court for the District of Columbia that the change does not have the purpose or effect of denying the right to vote on account of race or (b) it has submitted such change to the Attorney General of the United States and the Attorney General has not interposed an objection within sixty days. While the Act does not specifically provide for a remedy for failure to comply with Section Five, the Supreme Court has held that a complaint for injunctive relief to be heard by a district court of three judges may be filed in any U.S. District Court and that court if it is shown that Section Five applies must enjoin the utilization or implementation of such change until Section Five is complied with. *Allen v. Board of Elections*, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969).

\* \* \* \* \* \*

This district court of three judges is required to resolve any dispute as to the coverage of Section Five or, said more directly, to determine "whether such

changes have the potential for diluting the value of the Negro vote and are within the definitional terms of § 5." *Georgia v. United States,* 411 U.S. 526, 534, 93 S.Ct. 1702, 1707, 36 L.Ed.2d 472, 481 (1973). The question of coverage to be decided by this court does not include the ultimate question required by Section Five to be presented to the District Court for the District of Columbia or the Attorney General, i.e., whether or not the enactment in truth and fact has a discriminatory purpose or effect. *Perkins v. Matthews,* 400 U.S. 379, 383, 91 S.Ct. 431, 434, 27 L.Ed.2d 476, 482 (1971).

Plaintiffs contend that the school bond referendum scheduled for May 31, 1988, constitutes a "change," as that term has been defined under 42 U.S.C. § 1973c, and therefore, the bond referendum cannot be held on that date absent preclearance from the Attorney General's office. Plaintiffs support this position by citing the court to 28 C.F.R. § 51.17. This section provides in relevant part:

> (a) The conduct of a special election (e.g., an election to fill a vacancy; an initiative, referendum, or recall election; or a bond issue election) is subject to the preclearance requirement to the extent that the jurisdiction makes changes in the practices or procedures to be followed.

> (b) Any discretionary setting of the date for a special election or scheduling of events leading up to or following a special election is subject to the preclearance requirement.

Plaintiffs have also presented evidence that the Attorney General, has, in fact, refused to preclear the May 31st, 1988, election date [1] because he had not been provided with sufficient data to make an informed decision on the subject. Based upon these facts, and without any more evidence, plaintiffs assert that Section Five is implicated because the election, as scheduled, is a "change," and that it has the *"potential* for diluting the value of the Negro vote." *See Georgia v. United States,* 411 U.S. at 534, 93 S.Ct. at 1707 (emphasis added).

Plaintiffs have presented no evidence, however, that the standard, practice, or procedure for scheduling bond referendums presently being utilized in this state is any different from that in force or effect when the Voting Rights Act was adopted and/or extended. Even assuming that such is the case, the evidence presented before this court has utterly failed to demonstrate that the holding of the bond referendum on May 31st, 1988, has even the potential for diluting the minority vote. Plaintiffs' argument is that there would be an adverse effect with regard to voting by minorities if a bond referendum, such as the one at issue, is conducted on a date other than the date of a statewide or national election. As the argument goes, this would be necessary in order to insure a large black voter turnout. We are aware of nothing in Section Five jurisprudence which requires such a result. There is no reason to suspect that blacks or whites will turn out in greater or less numbers in proportion to each other if the election is conducted at a time when only one issue is put before the voters, as opposed to a date when other issues or races are pending. To find to the contrary would, in effect, restrict all special elections to being held at the time of a general primary or general election, and would entirely negate the purpose of having a special election law in the first place. Plaintiffs have presented no evidence to refute such a conclusion. Plaintiffs have cited the court to the Fifth Circuit's decision in *Garcia v. Guerra,* 744 F.2d 1159 (5th Cir.1984), however, this case is not controlling because the "change" therein clearly implicated the migrant farmworkers' ability to participate in the planned election.

While the court recognizes that the Attorney General plays a central role in formulating and implementing Section Five, and that his interpretation of the scope of this section is entitled to particular deference, the ultimate determination of whether a change is covered by Section Five is reserved for a three-judge panel in

---

1. Defendants have made an effort to comply with the Attorney General's regulations, how-

ever, their compliance was done under protest.

the local district court. *See Allen v. Board of Elections*, 393 U.S. 544, 562–63, 89 S.Ct. 817, 830, 22 L.Ed.2d 1 (1969); and *Garcia*, 744 F.2d at 1163. The Attorney General's regulation making all discretionary special elections subject to Section Five's coverage is simply not supported by the language found in 42 U.S.C. § 1973c. The electoral action involved must constitute a genuine change from past practices, and further it must have, at minimum, the potential for discrimination. The facts as presented herein, do not demonstrate these requirements.

Accordingly, because plaintiffs have failed to present any evidence that the school bond referendum scheduled for May 31st, 1988, is a cognizable "change" under Section Five of the Voting Rights Act, and that the election will in some way discriminate against minority voters, the court must and does hereby DENY plaintiffs' prayer for preliminary injunctive relief.