889 F.2d 1010
 Serena DUNN, individually and Willie A. Wiggs, and Marva
Pamela Evans, individually and on behalf of
similarly situated individuals,
Plaintiffs-Appellants, Cross-Appellees,
v.
THE FLORIDA BAR, the Supreme Court of Florida, Gerald F.
Richman, President, The Florida Bar, et al.,
Defendants-Appellees, Cross-Appellants.
 No. 88-3865.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 6, 1989.
 
 Alan B. Morrison, Washington, D.C., Elizabeth L. White, Jacksonville, Fla., for plaintiffs-appellants, cross-appellees.
 C. Harris Dittmar, Timothy J. Corrigan, Jacksonville, Fla., Eric J. Taylor, Asst. Atty. Gen., Tallahassee, Fla., defendants-appellees, cross-appellants.
 Appeals from the United States District Court for the Middle District of Florida.
 Before KRAVITCH, Circuit Judge, HILL*, Senior Circuit Judge, and FREEMAN**, District Judge.
 HILL, Senior Circuit Judge:
 
 
 1
 The appellants, who sought an amendment of one of the rules of The Florida Bar, have voluntarily dismissed their lawsuit, but continue to seek attorneys' fees pursuant to 42 U.S.C. Sec. 1988. The appellees deny that appellants are prevailing parties and deny that this case involves any rights secured by the United States Constitution. Thus, the appellees contend that the appellants did not assert a colorable constitutional claim that would entitle them to attorneys' fees under 42 U.S.C. Sec. 1988. The district court has entered a memorandum and order denying the appellants' application for fees on the grounds that they lacked a colorable claim. The court also made an alternative ruling that, had "the plaintiffs ... established their threshold constitutional entitlement under section 1983, to seek attorneys' fees under section 1988," then "... the court would award as reasonable attorneys' fees one-half of the net fees previously calculated."
 
 
 2
 We affirm the district court's initial ruling that the appellants are not entitled to any fees at all.
 
 I. FACTS
 
 3
 This case began life in another form. Its origins may be found in an entirely different matter, The Florida Bar v. Furman, 376 So.2d 378 (Fla.1979), appeal dismissed, 444 U.S. 1061, 100 S.Ct. 1001, 62 L.Ed.2d 744 (1980). In that case, the Florida Bar brought a civil action against Ms. Rosemary Furman, a legal secretary who assisted individuals, seeking divorces, who appeared pro se in the Florida courts. Specifically, Ms. Furman obtained information from the individuals, typed up the necessary papers, instructed them how to file and proceed with their cases, all for a fee of $50.00. The Bar argued, and the Florida Supreme Court agreed, that her activities constituted the unauthorized practice of law.
 
 
 4
 During the course of Ms. Furman's defense, her attorney, Mr. Alan B. Morrison, determined to test a legal theory that, under cases such as Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), and Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), the state may not constitutionally deny access to the legal system to those unable to pay for matters such as divorce. Thus, Ms. Furman told the original plaintiff in this action, Serena Dunn, that she could not assist her directly in obtaining a divorce; however, Ms. Dunn might become a plaintiff in a test case challenging the constitutionality of the Florida Bar rules.
 
 II. PROCEDURAL HISTORY
 
 5
 On March 16, 1983, Ms. Dunn who is illiterate, individually and on behalf of a class of similarly situated individuals, filed her complaint for declaratory and injunctive relief against The Florida Bar and The Supreme Court of Florida. In part, she stated:
 
 
 6
 Plaintiff class members are unable to afford the services of attorneys to assist them in obtaining relief which only the state can provide and are also unable, by reason of their illiteracy, blindness, their inability to read and write English, or other handicap to handle their matters pro se or with the limited assistance currently allowed to be provided by lay persons under Florida law.
 
 
 7
 On January 5, 1984, the district court denied an earlier motion to dismiss of defendant Florida Bar. On November 15, 1984, the court entered an order granting class certification in this matter; the Court determined that Willie A Wiggs and Marva Pamela Evans were adequate representatives of the plaintiff class. As ordered, Ms. Dunn, Mr. Wiggs and Ms. Evans filed a third amended complaint, which alleged:
 
 
 8
 [T]he Supreme Court has determined that lay assistants, such as legal secretaries, may do no more than type verbatim court pleadings that are given to them by their customers. They are forbidden from using intake forms to obtain from their customers the information called for in the pleadings, and they may not discuss the papers given them by their customers, even when the papers are incomplete or contain contradictory information. Failure to adhere strictly to these instructions subjects such lay assistants to injunctive actions, such as civil and criminal contempt proceedings, brought by the defendants.
 
 
 9
 Unlike Ms. Dunn, Mr. Wiggs and Ms. Evans are literate. They allege that they bring their action on behalf of a class of similarly situated individuals, consisting of all present and future residents of the Fourth Judicial Circuit of Florida:
 
 
 10
 (a) who either presently desire, or in the future may desire, to exercise their fundamental right to obtain a dissolution of marriage;
 
 
 11
 (b) who are unable to exercise their right to do so without the assistance of another person because they lack the skills, knowledge, familiarity with the court system, self-confidence, and other abilities required to appear pro se;
 
 
 12
 (c) who are not eligible to utilize the simplified dissolution of marriage procedures in Rule 1.611(c) of the Florida Rules of Civil Procedure which entitle them to the assistance of the Clerk of the Court in obtaining a dissolution of marriage;
 
 
 13
 (d) who are unable to obtain the services of a lawyer because they cannot afford to pay the charges of a lawyer and because no lawyers are available to serve them on a pro bono or reduced fee basis; and
 
 
 14
 (e) who are able to afford the services of persons who, although not members of the Bar, are able to provide them the assistance they need to obtain a dissolution of their marriage and for which they charge members of the plaintiff class an amount which the class members can afford; but who are unable to utilize the services of such lay assistants because of the instructions against lay assistants providing such services which are enforced by defendants.
 
 
 15
 The Florida Bar and the Florida Supreme Court filed separate motions for summary judgment on September 27, 1985 and October 2, 1985; on November 10, 1986 the district court denied the motion of each defendant. The court set a trial date of October 13, 1987, but the appellants' voluntary dismissal of the case on August 27, 1987 mooted the trial. The district court, therefore, never resolved the constitutional question that the appellants posed.
 
 
 16
 On March 20, 1987, the Florida Bar Board of Governors approved a proposed amendment to Supreme Court Rule 10-1-1(b), Rules Governing the Investigation and Prosecution of the Unlicensed Practice of Law. The amendment read as follows:
 
 
 17
 UPL. The unlicensed practice of law, as prohibited by statute, court rule, and case law of the State of Florida. For purposes of this chapter, it shall not constitute the unlicensed practice of law for nonlawyers to engage in limited oral communication to assist individuals in the completion of legal forms approved by the Supreme Court of Florida. Oral communication by nonlawyers is restricted to those communications essential to elicit factual information necessary for the completion of the form(s) and inform the individual how to file such form(s).
 
 
 18
 On June 9, 1987, the appellants' counsel submitted comments to the Supreme Court "on behalf of Serena Dunn and the other members of the certified plaintiff class in the case of Serena Dunn, et al v. The Florida Bar, et al...." Mr. Morrison noted that "we are troubled by some of the instructions contained in [the amendment], and we urge the court to modify them." He went on to request two small changes, "... that the word 'essential' ... be changed to 'reasonably necessary' [to] ... eliminate the in terrorem effect ..." and "that the phrase 'necessary for the completion of' ... be changed to 'to complete.' "
 
 
 19
 Mr. Morrison also asked the court to make clear "... that non-lawyers may tell the individuals, for example, how many copies must be filed, what the filing fees are, what is the proper method of payment, how long the typical period is before a hearing will be scheduled, and other matters of a routine administrative nature...."
 
 
 20
 On July 9, 1987, the Supreme Court of Florida issued a per curiam under the caption "The Florida Bar Re Amendment to Rules Regulating the Florida Bar (Chapter 10)." The per curiam noted that "[c]omments to the proposed amendment have been filed by an attorney representing a class of plaintiffs who wish to dissolve their marriages but who cannot afford a lawyer, who are ineligible for legal aid, who cannot currently be assisted by clerks of court, and who are unable to prepare the required papers by themselves." Florida Bar, 510 So.2d 596, 597 (Fla.1987). The court held:
 
 
 21
 After considering this matter, we adopt the bar's proposal, as amended by the comments we have received. We also hold that nonlawyers can give information regarding routine administrative matters.
 
 
 22
 510 So.2d at 597.
 
 
 23
 On July 27, 1987, Mr. Morrison wrote C. Harris Dittmar, Esq., counsel for The Florida Bar, and Mr. Eric J. Taylor, Esq., Assistant Attorney General, Department of Legal Affairs, counsel for the Supreme Court. Mr. Morrison informed them that, "[b]ased upon this change in the rules, which was initiated by the Bar and approved by the Supreme Court of Florida, plaintiffs have now obtained substantially all of the relief which they had sought and, accordingly, there is no reason for them to continue the case." He proposed a stipulation dismissing the case with prejudice, except for the question of attorneys' fees.
 
 
 24
 The issue of attorneys' fees concerns us now.
 
 III. THE ISSUES ON APPEAL
 
 25
 The appellants have raised two issues on appeal. They first contend that they were the prevailing parties in this matter for the purposes of section 1988, despite the settlement, since their lawsuit became the catalyst for the change in the rules of the Florida Bar. They also assert that their claim raised colorable constitutional issues for the purposes of section 1988.
 
 A. Prevailing Parties
 
 26
 Appellees in this matter vigorously contend that appellants are not prevailing parties within the meaning of section 1988. It is true that the district court did not adjudicate the merits of the appellants' claim; the appellants voluntarily dismissed their lawsuit, explaining that the subsequent change in the Florida Bar Rules had satisfied their claim.
 
 
 27
 We first note, as many circuits have held, that "a party may prevail and be entitled to attorneys' fees when remedial action by the defendant effectively moots the controversy subsequent to filing of the lawsuit." Iranian Students Ass'n v. Sawyer, 639 F.2d 1160, 1163 (5th Cir.1981). The Supreme Court, in turn, has held that "[t]he fact that respondent prevailed through a settlement rather than through litigation does not weaken her claim to fees." Maher v. Gagne, 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980). See also Doe v. Marshall, 622 F.2d 118, 120 (5th Cir.1980); Robinson v. Kimbrough, 652 F.2d 458, 465 (5th Cir.1980); Criterion Club v. Board of Comm'rs, 594 F.2d 118, 120 (5th Cir.1979).[1] As the Fifth Circuit has noted:
 
 
 28
 The Act's legislative history evinces a clear Congressional intent to award attorney's fees even when no formal judicial relief is obtained and no final judicial determination is made on any constitutional claim. The Senate Report explains that 'parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief.' S.Rep. No. 94-1011 at 5, [94th Cong.2d Sess., reprinted in [1976] U.S.Code Cong. & Admin.News at 5912].
 
 
 29
 Robinson v. Kimbrough, 652 F.2d at 465. In the instant case, therefore, the district court's inability to adjudicate the merits of appellants' constitutional claim would not bar an award for fees.
 
 
 30
 Appellees, however, do not assert that merely the controversy's mootness precludes the appellants from prevailing. They also contend that this court should not credit the appellants with sole, or even primary, responsibility for the change in rules; they contend instead that "... the changes in the unlicensed practice of law rules adopted by the Florida Supreme Court were the product of a process that predated this lawsuit by at least four years, and which has continued independently of, and notwithstanding, the plaintiffs' action." They likewise contend that the amendment offered such a "minor relaxing of the strict prohibition" against unauthorized practice that "the amendment to the Rule offered no relief for this type of person."
 
 
 31
 We find both these contentions tenuous at best. As appellants point out, the Florida Bar's Access Committee first considered amending the UPL rules in November, 1986, the same month that the district court denied the appellants' motion for summary judgment. Furthermore, in March 1987, the month after the district court set the case down for trial, the Committee recommended the changes to the Bar's Board of Governors, which then recommended them to the Florida Supreme Court. We find this sequence enlightening. We also find the language of the First Circuit, faced with a similar case, helpful:
 
 
 32
 We ... note that we consider the chronological sequence of events to be an important, although clearly not definitive factor, in determining whether or not defendant can be reasonably inferred to have guided his actions in response to plaintiff's lawsuit. This is particularly true where the evidence relevant to the causes of defendant's behavior is under defendant's control and not easily accessible to the plaintiff.
 
 
 33
 Nadeau v. Helgemoe, 581 F.2d 275, 281 (1st Cir.1978). In the instant case, moreover, the Florida Supreme Court expressly considered, and implemented, the comments of appellants' counsel when it altered the proposed rule. Florida Bar, 510 So.2d at 597. We are satisfied, therefore, that appellants' role in the Rule amendment was significant; we see no reason to minimize their responsibility, or their achievement, now.
 
 
 34
 We are also satisfied that appellants achieved approximately all of the relief they sought. Certainly, appellants' counsel referred to "this change in the rules" in his decision to dismiss the suit; he also explained that "plaintiffs have now obtained substantially all of the relief which they had sought and, accordingly, there is no reason for them to continue the case." Appellants' Third Amended Complaint, moreover, prays only that lay assistants be allowed to "[aid] plaintiffs ... in obtaining dissolution of their marriages," plaintiff's Memorandum in Opposition to Motion of the Florida Bar to Dismiss asks that lay assistants be permitted to obtain "information necessary to complete divorce pleadings from ... clients orally." The new rule permits precisely this relief.[2] Appellees argue that even under the new Rule, lay assistants may not inter alia, "[carry] on unrestricted oral communication with the customer." We agree that appellants did not achieve a complete repeal of the prohibition against oral communication; the revised rule, however, certainly incorporates the spirit of the changes that they sought. We hold, therefore, that appellants played a significant role in accomplishing the relief that they desired. The record, moreover, amply supports the district court's finding of "a clear causal connection between the prosecution of the Dunn case and the Florida Bar's proposed revised ... Rule."
 
 B. Colorable Constitutional Claim
 
 35
 Appellants prevailed. We must next examine whether, "consistent with the policy underlying Sec. 1988, [they] in some way vindicate[d] a civil right at issue in the litigation against the violation of that civil right ..." Doe v. Busbee, 684 F.2d 1375, 1381 (11th Cir.1982) (emphasis supplied). As the Fifth Circuit has noted in Williams v. Leatherbury, 672 F.2d 549, 551 (5th Cir.1982), even if a defendant unilaterally undertakes action that moots the controversy, a plaintiff may nevertheless recover attorneys' fees if he can demonstrate (1) a causal connection between the filing of the suit and the defendant's action; and (2) that the defendant's conduct was required by law. In a similar context, the Fifth Circuit stated:
 
 
 36
 The second prong of the Leatherbury test, consequently, does not require appellants to show that they would have won on the merits. Rather, as the Leatherbury case said, appellants need only show that the action taken by the appellees was "not a wholly gratuitous response to an action that in itself was frivolous or groundless." (citation omitted). A claim is not frivolous if it is arguably supported by case or statutory law.
 
 
 37
 Garcia v. Guerra, 744 F.2d 1159, 1162-63 (5th Cir.1984).[3]
 
 
 38
 The scenario in the instant case is a complicated one. Appellees complied with appellants' requests; they amended the Rules of the Florida Bar to ensure that lay assistants could provide limited aid to those in need of a divorce, who could not proceed pro se, and who could not afford the services of an attorney. Appellants have achieved their goal, yet despite this result, they do not merit relief if constitutional factors do not require that end. Once more we borrow language from the Fifth Circuit:
 
 
 39
 ... [A] plaintiff who brings an action that has no colorable, or even reasonable, likelihood of success on the merits is not entitled to recover attorney's fees if the defendant simply complies with the plaintiff's demands and moots the case for reasons that have nothing to do with the potential merit of the suit. Whether activated by economic, political, or purely personal concerns, a defendant may choose voluntarily to make the change sought in the suit rather than undergo protracted and expensive litigation.
 
 
 40
 Hennigan v. Ouachita Parish School Bd., 749 F.2d 1148, 1153 (5th Cir.1985).
 
 
 41
 At this point, we must squarely examine the nature of the appellants' claim. We approach this subject with caution, for we do not wish to suggest that the novelty of the appellants' claim compels its defeat:
 
 
 42
 Actions based on novel legal theories generally require greater attorney effort than actions based upon familiar legal theories. This effort, in turn, may pay later dividends in ensuring that previously unprotected classes receive the benefit of rights that the Constitution or statutes guarantee.
 
 
 43
 Teitelbaum v. Sorenson, 648 F.2d 1248, 1250 (9th Cir.1981).[4] The practice of constitutional law has never been a glib or facile exercise; no court, and no counsel, can state with ease or accuracy the limitations on rights enumerated or implied by the Constitution:
 
 
 44
 A constitution, to contain an accurate detail of all the subdivisions of which its great powers will admit, and of all the means by which they may be carried into execution, would partake of the prolixity of a legal code, and could scarcely be embraced by the human mind. It would, probably, never be understood by the public. Its nature, therefore, requires, that only its great outlines should be marked, its important objects designated, and the minor ingredients which compose those objects, be deduced from the nature of the objects themselves.
 
 
 45
 McCulloch v. Maryland, 17 (4 Wheat.) U.S. 316, 407, 4 L.Ed. 579 (Wheaton) (1819). Constitutional law, of necessity, evolves; claims once novel may become established. Our task, therefore, is a difficult one; we must examine prior case and statutory law, not only to ascertain their holdings and text, but to examine their ramifications, and to determine to our own satisfaction that the Constitution could not, under even the most expansive of interpretations, lend color to appellants' claim.
 
 
 46
 Appellants based their constitutional claim upon two Supreme Court decisions, Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) and Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), and referred to a third, Bounds v. Smith 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Boddie held that due process prohibits a state from denying, solely on account of inability to pay court fees and costs, access to its courts to indigents who in good faith seek a divorce. Johnson concerned inmates in a state prison; the Court held that, in the absence of some provision by the state for a reasonable alternative to assist illiterate or poorly educated inmates in preparing petitions for post-conviction relief, the state may not validly enforce a regulation which absolutely bars inmates from furnishing such assistance to other prisoners. Finally, in Bounds, the Court held that, where lawyers or paralegals were unavailable to provide assistance to prisoners, the inmates must be given access to a law library to protect access to the courts.
 
 
 47
 None of these cases support appellants' claim. We begin with Boddie. In United States v. Kras, 409 U.S. 434, 450, 93 S.Ct. 631, 640, 34 L.Ed.2d 626 (1973), the Court declined "to extend the principle of Boddie to the no asset bankruptcy proceeding." The Court reexamined Boddie, and noted:
 
 
 48
 Mr. Justice Harlin, in his opinion for the Court in Boddie, meticulously pointed out, as we have noted above, that the Court went 'no further than necessary to dispose of the case before us' and did 'not decide that access for all individuals to the courts is a right that is, in all circumstances, guaranteed by the Due Process Clause of the Fourteenth Amendment so that its exercise may not be placed beyond the reach of any individual.' (Citation omitted). The Court obviously stopped short of an unlimited rule that an indigent at all times and in all cases has the right to relief without the payment of fees.
 
 
 49
 (Emphasis supplied). Kras, 409 U.S. at 451, 93 S.Ct. at 641. The Supreme Court has already explicitly limited Boddie to its holding; this court, therefore, cannot expand it.
 
 
 50
 In Johnson v. Avery, the plaintiff was incarcerated in a state prison: the Supreme Court held that the state could not absolutely bar him from furnishing assistance to other inmates in the preparation of their petitions for post-conviction relief. The Court based its holding on "... the fundamental importance of the writ of habeas corpus in our constitutional scheme." Johnson, 393 U.S. at 484, 89 S.Ct. at 748. In Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977), similarly, the Supreme Court held "that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."
 
 
 51
 No stretch of logic can extend those holdings to the case before us now. No one has incarcerated appellants; no one has restricted their opportunity to seek help from family, friends and acquaintances in the preparation of their petitions for divorce.[5] 5] Cases involving inmates simply do not furnish the sort of support necessary for plaintiffs' claims to flourish here.
 
 
 52
 In Hooks v. Wainwright, 775 F.2d 1433, 1436 (11th Cir.1985), moreover, this court made clear that we would not extend the Supreme Court's holding in Bounds; we noted that "Bounds was a limited decision[,]" and commented that "[a]s stated in Bounds, access to the courts may be provided in whatsoever manner the state desires." We found it highly unlikely, in fact, that courts could "constitutionally [require] the state to provide legal counsel for the imprisoned, not available as a matter of constitutional right to the unimprisoned in civil cases." Hooks, 775 F.2d at 1437 (emphasis supplied). We continued:
 
 
 53
 The district court was commendably compassionate for the plight of prisoners and their difficulty in getting proper legal help. But prisoners are not alone in that situation. Vast numbers of the unimprisoned, both convicted and unconvicted, can make a similar case for the need of legal counsel, but to date no constitutional obligation of the state to provide that help has been articulated.
 
 
 54
 Id. at 1437. (emphasis supplied). While it is true, in short, that Boddie v. Connecticut, Johnson v. Avery, and Bounds v. Smith all ensure easier access to the courts for certain classes of persons, they do not burden the state with a constitutional obligation to provide lay assistance to a narrowly proscribed class of indigents.[6]
 
 
 55
 States have, in fact, traditionally expressed important reasons for controlling the unauthorized practice of law. In Goldfarb v. Virginia State Bar, 421 U.S. 773, 792, 95 S.Ct. 2004, 2016, 44 L.Ed.2d 572 (1975), to use a widely quoted example, the Supreme Court "recognize[d] that the states have a compelling interest in the practice of professions within their boundaries, and that as part of their power to protect the public health, safety and other valid interests they have broad power to establish safeguards for licensing practitioners and regulating the practice of professions." The Florida Supreme Court, in turn, in State v. Sperry, 140 So.2d 587, 591 (Fla.1962) has rightly observed that the prohibition of the practice of law is not to "aid or protect the members of the legal profession," but to protect "the public from being advised and represented in legal matters by unqualified persons over whom the judicial department can exercise little, if any, control in the matter of infractions of the code of conduct which, in the public interest, lawyers are bound to observe." Sperry, 140 So.2d at 595. Courts traditionally have placed great emphasis on the state's power to regulate the practice of law. We defer to that power now, and find that the plaintiff's attempt in the instant case to strike or curb the state's restrictions on lay assistants on constitutional grounds would lead courts into a quagmire unsupported by any directive from any court.
 
 
 56
 Appellees in this matter relaxed their traditional prohibition against the unauthorized, or unlicensed, practice of law. We cannot find that they did so under any constitutional compulsion. At an oral hearing on December 2, 1985, the original judge in this matter, Judge Melton, engaged in colloquy with counsel for the Florida Supreme Court. At one point, the Court said:Now it seems to me through this: that assuming--let's get away from the constitutional ground just a moment. And let's just talk about what's right and what's wrong. It's a problem that I recognize because I've got several volumes here of it already. You have spent a lot of time....
 
 
 57
 Therefore, if we have a problem and the Florida Bar and the Supreme Court and these parties can solve the problem for these people, even though maybe they have--let's assume for the sake of what we're talking about now that they really have no right to it, that there's no constitutional right and really they shouldn't--maybe nothing could be done about it unless somebody does. What's wrong with correcting a wrong just for the sake of doing something that would be in the best interests of everyone?
 
 
 58
 Mr. Taylor: From my personal standpoint, not a thing.
 
 
 59
 (emphasis supplied). Judge Melton denied defendants' motion for summary judgment in November, 1989; that same month, the Unlicensed Practice of Law/Access Joint Committee met with the Board of Governors' Committee on Access to the Legal System; the former committee recommended that the latter study and take action regarding access to the courts. Moreover, on February 18, 1987, Mr. Dittmar, The Florida Bar's counsel, revealed that Judge Melton's views were reported to the Florida Bar Committees. We conclude that the State Bar and Supreme Court of Florida amended their Bar Rules "... just for the sake of doing something that would be in the best interests of everyone," and we see no reason to doubt the wisdom of their course. We cannot conclude, however, that they were propelled in this direction by any compulsion stronger than the dictates of public policy. We commend appellees on their willingness to explore new directions in their efforts to satisfy various public needs. We hold that considerations of policy and strategy, rather than any constitutional directive, motivated the conduct of the appellees.
 
 IV. CONCLUSION
 
 60
 In sum, we find that appellants' lawsuit played a significant role in obtaining the rule change they desired; they prevailed, despite the ultimate mootness of the controversy, for the purposes of 42 U.S.C. Sec. 1988. Thus we find that appellants satisfied the first prong of the Fifth Circuit's Leatherbury test. We do not, however, find that appellants vindicated any civil or constitutional right, as required by this court's opinion in Doe v. Busbee; thus the second prong of the Leatherbury test remains unsatisfied. We conclude, therefore, that appellants are not entitled to attorneys' fees under 42 U.S.C. Sec. 1988.
 
 
 61
 The initial judgment of the district court, showing no entitlement to fees, is therefore
 
 
 62
 AFFIRMED.
 
 
 
 *
 See Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 **
 Honorable Richard C. Freeman, U.S. District Judge for the Northern District of Georgia, sitting by designation
 
 
 [1]
 The Eleventh Circuit, in the en banc decision Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981
 
 
 [2]
 As noted previously, the new rule states, "... it shall not constitute the unlicensed practice of law for nonlawyers to engage in limited oral communications to assist individuals in the completion of legal forms approved by the Supreme Court of Florida."
 
 
 [3]
 For other restatements of the "colorable claim" test, see Robinson v. Kimbrough, 652 F.2d 458, 466 (5th Cir.1981) ("... plaintiffs may recover attorneys' fees if their lawsuit is a substantial factor or a significant catalyst in motivating the defendants to end their unconstitutional behavior."); Bly v. McLeod, 605 F.2d 134, 139 (4th Cir.1979) ("... in deciding whether one is a prevailing party under the statute, the court should consider the precise factual/legal condition the fee claimant has sought to change, and with that done and as a benchmark, the court should then consider whether the plaintiff fee claimant's efforts contributed in a significant way to the change."); Nadeau v. Helgemoe, 581 F.2d 275, 281 (1st Cir.1978) ("If it has been judicially determined that defendants' conduct, however beneficial it may be to plaintiff's interests, is not required by law, then defendants must be held to have acted gratuitously and plaintiffs have not prevailed in a legal sense.") See also "Attorney's Fees in Moot Cases," 49 U.Chi.L.Rev. 819 (1982)
 
 
 [4]
 Congress, moreover, apparently did not intend the novelty of a plaintiff's claim to bar his relief. The Senate Report discussing the Attorney's Fees Act cites with approval Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974). See S.Rep. No. 94-1011, 94th Cong.2d Sess. 6, reprinted in [1976] U.S.Code Cong. & Ad.News 5908, 5913. Johnson states that a claim's novelty is a factor favoring a fee award. Johnson, 488 F.2d at 1250
 
 
 [5]
 In fact, the deposition testimony of Ms. Dunn makes clear that after Ms. Dunn took the "intake form" given to her by Ms. Furman, a friend, Erlene, and Erlene's mother went over the paper with her and tried to explain things to her that she did not understand. She filled out her name, her address and "the certain date that she got married."
 
 
 [6]
 The New York Court of Appeals in In re Smiley, 36 N.Y.2d 433, 369 N.Y.S.2d 87, 91, 330 N.E.2d 53, 57 (1975), held that in a divorce proceeding an indigent party is not entitled, as a matter of constitutional right, to an attorney. The court stated that "on no view of the matter is counsel required in a matrimonial action as a condition to access to the court. Of course, counsel is always desirable, and in complicated matrimonial litigation would be essential. But however desirable or necessary, representation by counsel is not a legal condition to access to the courts." Since courts have not held that there is a clear right to counsel in a civil domestic relations case, there is little wonder that no court has held that there exists a constitutional right of access to the courts through an unlicensed lay assistant