Patricia MORRIS and Keith Meyer, Plaintiffs-Appellants,

v.

CITY OF WEST PALM BEACH, Defendant-Appellee.

No. 98-4343.

United States Court of Appeals,

Eleventh Circuit.

Nov. 3, 1999.

Appeal from the United States District Court for the Southern District of Florida. (No. 95-8059-CV-DTKH), Daniel T.K. Hurley, Judge.

Before BIRCH and CARNES, Circuit Judges, and MILLS[*], Senior District Judge.

BIRCH, Circuit Judge:

This case raises the question of the viability and scope of the "catalyst" test, which is a means of determining whether a party who did not receive a judgment or formal settlement in its favor is a "prevailing party" under 42 U.S.C. § 1988 and other fee-shifting statutes. Because we hold that the catalyst test remains available in this circuit and because the district court incorrectly applied the catalyst test, we VACATE and REMAND.

I. *BACKGROUND*

Appellants Patricia Morris and Keith Meyer ("Appellants") filed the complaint in this case on January 27, 1995. The complaint challenged the constitutionality of certain sections of the City of West Palm Beach ("City") Code's chapter on parades or processions in public areas (hereinafter "Original Ordinance"), which covers picketing and demonstrating. *See* R1-1. The complaint also challenged provisions of the City's Police Department's "Permit Application for a Process/Demonstration" Policy (hereinafter "Original Policy"). *See id.* At the same time, Appellants filed a motion for declaratory, preliminary, and permanent injunctive relief. On November 6, 1995, after consolidating Appellants' case with a second case, the district court denied the

---

[*]Honorable Richard Mills, Senior U.S. District Judge for the Central District of Illinois, sitting by designation.

motion for injunctive relief; we affirmed this denial without opinion on November 6, 1995.[1] Subsequently, the cases were severed and the parties agreed to have the case referred to a magistrate judge for trial and final judgment. On January 6, 1997, the magistrate judge, acting as the district court, set the case for a non-jury trial on the calendar commencing on April 28, 1997. On March 14, 1997, the district court, after consulting with the parties, specially set the trial for April 8, 1997.

On March 26, 1997, the City filed a motion to dismiss on the ground that the Original Ordinance had been repealed and replaced by a new ordinance on March 10, 1997 ("Revised Ordinance"). In its motion to dismiss, the City stated:

> *Throughout the course of litigation, Defendant informed Plaintiffs,* as was part of the basis for the denial of the Motion for Preliminary Injunction, that the code and application process would not be applied to the Plaintiffs, and *that the Defendant was revising the code to address certain areas;* the City maintained and still maintains the constitutionality of its ordinance and permit application process on its face and as applied.
>
> *Defendant has presented over the course of the last several months, drafts of the new ordinance,* as a matter of courtesy, but submits that Plaintiffs' agreement or acquiescence on the enactment of the new code is not necessary for the full adjudication of the claim for the Court, or for any other related matter.

R1-39 at 2 (emphasis added). On April 7, 1997, Appellants responded, arguing that the City's voluntary cessation of certain unconstitutional behavior did not moot the cause of action and that the Revised Ordinance contained some of the challenged regulations found in the Original Ordinance. *See* R2-43. On April 21, 1997, the district court denied the City's motion to dismiss on the grounds that the Original Ordinance could be re-enacted and that "there do appear to be areas of the new ordinance which were being challenged by the Plaintiffs in respect to the old ordinance. In other words, the new ordinance carries forward *some* of the allegedly objectionable requirements for issuance of a permit." R2-47 at 3, 9 (emphasis added). On May 5, 1997, Appellants filed an Amended Complaint challenging the Revised Ordinance. On June 24, 1997, the district court held a non-jury trial on Appellants' Amended Complaint. On July 24, 1997, the district court

---

[1]It is undisputed that the motion for preliminary injunction was denied because the City had informed Appellants and the district court that the Original Ordinance and Policy would not be applied to Appellants during the case's pendency. *See* R1-39 at 2.

issued its final judgment finding that the Revised Ordinance was constitutional. In finding that Appellants had failed to show injury, the district court relied on an amendment made in the Revised Ordinance that limited application of the Ordinance to groups of 25 or more. *See* R-55 (Final Judgment) at 19.

On August 25, 1997, Appellants filed the motion for attorneys' fees and costs at issue in this appeal.[2] Attached to their motion for fees and costs, Appellants included, among other things, an affidavit from attorney James K. Green on the issue of whether Appellants' lawsuit was a catalyst for the revisions to the Original Code, *see* R2-56-Ex. C to Mot., and five letters from Appellants' counsel to the City's counsel, *see* R2-56-Ex. A-E to Mem. The five letters detailed discussions between the parties regarding redrafting the Original Ordinance and detailed the escalation of the litigation after the redrafting discussed in 1995 was delayed. On January 27, 1998, the district court denied Appellants' motion for attorney's fees and costs. The court denied the motion solely on the ground that Appellants had failed to prove causation and made no specific findings on the viability of the catalyst test or on the other elements of the catalyst test. On February 20, 1998, Appellants filed this appeal.

## II. *DISCUSSION*

Appellants argue that the district court incorrectly found that they were not "prevailing parties" pursuant to 42 U.S.C. § 1988. Only "prevailing parties" may recover attorney's fees under § 1988. *Church of Scientology Flag Service v. City of Clearwater,* 2 F.3d 1509, 1512 (11th Cir.1993) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)) (hereinafter "*Scientology II* "). While "[w]e review the factual findings underlying a district court's determination regarding 'prevailing party' status for clear error," we review *de novo* the legal question of "whether the facts as found suffice to render the plaintiff a 'prevailing party.' " *Id.* at 1513.

Because Appellants did not receive a favorable judgment on the merits or entry of a consent decree or settlement, the only means through which they could be found to have prevailed is the "catalyst" test.

---

[2]The City also filed a motion for attorney's fees and costs but have not appealed the denial of that motion.

3

Under the catalyst test, a plaintiff should be found as prevailing if its " 'ends are accomplished as the result of the litigation even without formal judicial recognition,' " there is a " 'causal connection' " between the plaintiff's lawsuit and the defendant's actions providing relief to the plaintiff, and the defendant's actions were " 'required by law.' " *Posada v. Lamb County, Texas,* 716 F.2d 1066, 1071 (5th Cir.1983) (citations omitted). *See also Dunn v. Florida Bar,* 889 F.2d 1010, 1013-15 (11th Cir.1989) (applying catalyst test). Before applying this test, we must address a question that we have not yet explicitly resolved: whether the catalyst test continues to be viable in this circuit after the Supreme Court issued its opinion in *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). *See Cullens v. Georgia Dep't of Transp.,* 29 F.3d 1489, 1494-95 & n. 4 (11th Cir.1994) (discussing question of whether dicta in *Farrar* eliminated the catalyst test; leaving question open because plaintiffs could not show that they met the catalyst test); *Scientology II,* 2 F.3d at 1513-14 (implicitly holding that the catalyst test survived *Farrar* by applying it after the opinion in *Farrar* was issued).[3] Because the catalyst test remains viable and because the district court did not address evidence tending to show that Appellants were catalysts for the City's changes to the Original Ordinance, we vacate and remand for a reevaluation of Appellants' request for attorney's fees.

*A.     Viability of the catalyst test*

We have long held that a plaintiff who did not receive a formal judgment in its favor was a "prevailing party" if it met the elements of the catalyst test. *See, e.g., Ketterle v. B.P. Oil, Inc.,* 909 F.2d 425, 429-30 (11th Cir.1990)[4]; *Dunn,* 889 F.2d at 1013-15; *Royal Crown Cola Co. v. Coca-Cola Co.,* 887 F.2d 1480, 1486 (11th Cir.1989); *Posada,* 716 F.2d at 1071. In the 1992 decision in *Farrar,* however, the Supreme Court stated:

---

[3]Neither the parties nor the district court address this question, though they do cite to the 1993 opinion in *Scientology II,* which implicitly held that the catalyst test survived *Farrar.* 2 F.3d at 1513-14. We note that our holding today is consistent with the application found in *Scientology II.*

[4]It is permissible to interpret one fee-shifting statute by referring to cases that interpret other fee-shifting statutes. *See Ketterle,* 909 F.2d at 429; *see also Hensley,* 461 U.S. at 433 n. 7, 103 S.Ct. at 1939 n. 7 (noting that " '[t]he standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a "prevailing party".' ").

4

[T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought or comparable relief through a consent decree or settlement. Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement. Otherwise the judgment or settlement cannot be said to "affec[t] the behavior of the defendant toward the plaintiff." ... In short, a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.

506 U.S. at 111-12, 113 S.Ct. at 573 (citations omitted).

This language, taken on face value, casts doubt on the viability of the catalyst test, which is only applied in the absence of a formal judgment, consent decree, or settlement. The majority of courts that have addressed the question, however, have found that *Farrar,* which does not mention the catalyst test and which did not present a question relating to the form of relief, does not bar the catalyst test.[5]

Like the majority of our sister circuit courts which have addressed this issue, and in accordance with our implicit holding in *Scientology II,* we hold that the catalyst test survived *Farrar.* While no Supreme Court case has ever affirmatively upheld the application of the catalyst test, the catalyst test accords well with long-held notions of prevailing parties. *See Hewitt v. Helms,* 482 U.S. 755, 760-61, 107 S.Ct. 2672, 2676, 96 L.Ed.2d 654 (1987) ("It is settled law, of course, that relief need not be judicially decreed in order to justify a fee award under § 1988. A lawsuit sometimes produces voluntary action by the defendant that

---

[5]The First, Second, Third, Fifth, Sixth, Eighth, Ninth, and Tenth Circuits have all found, explicitly or, in the case of the First Circuit, implicitly, that the catalyst test survived *Farrar. See Payne v. Board of Education, Cleveland City Schools,* 88 F.3d 392, 397 & n. 2 (6th Cir.1996); *Stivers v. Pierce,* 71 F.3d 732, 751-52, 753 n. 10 (9th Cir.1995); *Marbley v. Bane,* 57 F.3d 224, 234 (2d Cir.1995); *Beard v. Teska,* 31 F.3d 942, 951 (10th Cir.1994); *Baumgartner v. Harrisburg Housing Authority,* 21 F.3d 541, 548-50 (3d Cir.1994); *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist.,* 17 F.3d 260, 263 & n. 2 (8th Cir.1994); *Craig v. Gregg County, Tex.,* 988 F.2d 18, 20-21 (5th Cir.1993); *Paris v. U.S. Dept. of Housing and Urban Dev.,* 988 F.2d 236, 238 (1st Cir.1993). The Fourth Circuit has held that *Farrar* bars application of the catalyst test, *see Alexander S. v. Boyd,* 113 F.3d 1373, 1389 (4th Cir.1997), *cert. denied,* --- U.S. ----, 118 S.Ct. 880, 139 L.Ed.2d 869 (1998), while the Seventh Circuit, having originally held that the catalyst test survived *Farrar, see Zinn v. Shalala,* 35 F.3d 273, 276 (7th Cir.1994), has recently used language (without citing or overruling *Zinn* ) that at least questions the viability of the catalyst test, *see Board of Educ. of Downers Grove Grade Sch. Dist. No. 58 v. Steven L.,* 89 F.3d 464, 469 ("The outcome of this suit resulted in no enforceable obligations for the school district. Any relief that Andrew and his parents received was not in the form of a judgment or settlement. Thus, ... Andrew and his parents cannot be considered to have substantially prevailed, and no attorneys fees or costs will be awarded to them under the applicable federal statute.").

5

affords the plaintiff all or some of the relief he sought through a judgment—*e.g.,* a monetary settlement or a change in conduct that redresses the plaintiff's grievances. When that occurs, the plaintiff is deemed to have prevailed despite the absence of a formal judgment in his favor."). Additionally, the question before the Court in *Farrar* addressed the *degree* of relief, rather than the *form* of relief, for the plaintiffs in *Farrar* had attained an enforceable judgment of nominal damages. 506 U.S. at 107, 113 S.Ct. at 570. The fact that the majority used broad language in discussing the question before it (i.e., whether an enforceable judgment of nominal damages can justify a fee award under § 1988) does not indicate how it would rule on the question of whether a showing that a plaintiff's lawsuit caused the defendant to act to remedy unconstitutional behavior can justify a fee award. *See Marbley,* 57 F.3d at 234; *Baumgartner,* 21 F.3d at 547-48. The catalyst test creates incentives for plaintiffs to initiate potentially meritorious civil rights cases and for plaintiffs to discontinue litigation after receiving through the defendant's acquiescence the remedy initially sought. In light of its long history and the important policies undergirding the catalyst test, we will not extend *Farrar* to eliminate the catalyst test.[6]

B.      *Scope of the catalyst test*

Having found that the catalyst test survived *Farrar,* we turn to its scope and application. To show that they were prevailing parties pursuant to the catalyst test, Appellants must prove the following elements: First, Appellants must show that action by the City created a " 'material alteration of the legal relationship of the parties' " such that Appellants have " 'succeeded on "any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit",' " *Scientology II,* 2 F.3d at 1513 (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792-93, 109 S.Ct. 1486, 1494, 103 L.Ed.2d 866 (1989) and *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939), such that Appellants were "directly benefit[ted]."

_____

[6]Even if we did believe that *Farrar* weakened our prior rulings on the catalyst test, "we are not at liberty to disregard binding [circuit] case law that is so closely on point and has only been weakened, rather than directly overruled by the Supreme Court." *Florida League of Prof'l Lobbyists v. Meggs,* 87 F.3d 457, 462 (11th Cir.1996); *see also United States v. Smith,* 122 F.3d 1355, 1359 (11th Cir.1997) ("Under the prior precedent rule, we are bound by earlier panel holdings ... unless and until they are overruled *en banc* or by the Supreme Court") (citing *inter alia Florida League of Prof'l Lobbyists* ).

6

*Farrar,* 506 U.S. at 111-12, 113 S.Ct. at 573. Second, Appellants must show that their lawsuit caused (i.e., was the catalyst for) the City's action. *See Royal Crown Cola,* 887 F.2d at 1486. Third, Appellants must show that "they had a 'colorable claim' or 'reasonable likelihood of success on the merits.' " *Ketterle,* 909 F.2d at 430 (quoting *Dunn,* 889 F.2d at 1015). These elements secure the interests behind § 1988 by shifting attorney's fees if and only if a plaintiff vindicated the civil rights laws by filing a nonfrivolous lawsuit that substantially succeeded.

1.      *Material alteration of legal relationship*

The first element is the familiar requirement of substantial success explicated in *Texas State Teachers Ass'n v. Garland Ind. Sch. Dist.,* in which the court found that a party prevails, i.e., achieves "material alteration of the legal relationship of the parties" by achieving success on " '*any* significant issue in litigation' " which constitutes more than a "purely technical or de minimis" victory by the plaintiff. 489 U.S. at 791-93, 109 S.Ct. at 1493-94 (1989) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278-79 (1st Cir.1978)) (emphasis added). Additionally, the plaintiff must directly benefit from the success attained in the lawsuit. *See Farrar,* 506 U.S. at 111-12, 113 S.Ct. at 573 (holding that a material alteration of the legal relationship between the parties occurs when the remedy "modif[ies] the defendant's behavior in a way that directly benefits the plaintiff."). The plaintiff need not receive complete relief in order to prevail. *See Scientology II,* 2 F.3d at 1513 (finding that plaintiff was a "prevailing party" where the plaintiff's lawsuit caused a city to amend an ordinance that "abandoned several challenged provisions," such that the "successes, while partial only, are neither technical nor de minimis"); *see also Ensley Branch, N.A.A.C.P. v. Seibels,* 31 F.3d 1548, 1583 (11th Cir.1994) (finding that class had prevailed where it "obtained relief on the merits of the same general type as it originally sought, even if to a lesser extent than it might have liked"); *Crowder v. Housing Authority of the City of Atlanta,* 908 F.2d 843, 848-49 (11th Cir.1990) (finding that plaintiffs had prevailed where injunction provided "some, if not most, of the relief sought by plaintiffs").

The district court made no specific finding as to the substantial element. While the district court characterized the amendments to the ordinance as "not overwhelming," it did note that "[t]he most significant change ... is the applicability of the new ordinance and the requirement to obtain a permit only if 25 or more people intended to picket/demonstrate." R3-79 at 5. We view this change, which was relied on by the district court in finding the Revised Ordinance to be constitutional, as in and of itself substantial. We note that other changes to both the Original Ordinance and Original Policy—such as the repeal of requirements directing protesters to remain in a single file line while picketing—are potentially significant. On remand, the district court should specifically make findings of fact regarding all of the amendments to the Original Ordinance and Original Policy, including the degree of significance and whether the changes directly benefitted Appellants.[7] In making these findings, the district court should keep in mind that Appellants' continued, unsuccessful challenge to the Revised Ordinance is not relevant to the question of whether the amendments to the Original Ordinance materially altered the legal relationship between the parties. *See Scientology II,* 2 F.3d at 1514 ("[I]t is inappropriate to deny 'prevailing-party' status merely because Scientology's pleadings in challenging the amended ... Ordinance alleged the same or similar constitutional defects as its earlier action.... The fact that Scientology may (or may not) ultimately prevail in those challenges has little [to] do with the question of whether it prevailed in challenging the repealed provisions of the [old] Ordinance. Scientology did not fail when Clearwater ceased some of its challenged discriminatory conduct merely because the city persisted in other challenged conduct."). Rather, the district court should compare the relief sought in the complaint with the relief received by Appellants through the amendments to the Original Ordinance and Policy. *See Institutionalized Juveniles v. Secretary of Public Welfare,* 758 F.2d 897, 911 (3d Cir.1985) ("To apply the prevailing party standard, it is important first to identify the relief plaintiff sought and, in relevant cases, the

---

[7]While it is true that Appellants need only show one significant change to the Original Ordinance or Original Policy in order to justify an award of attorney's fees, it is necessary for the district court to evaluate all of the changes for completeness and to determine degree of success for purposes of fee computation, if necessary. *See Hensley,* 461 U.S. at 436, 103 S.Ct. at 1941.

legal theories on which the relief was based. Usually a common-sense comparison between relief sought and relief obtained will be sufficient to indicate whether a party has prevailed.").

2.      *Causal relationship*

The second element, causation, ensures that a plaintiff does not receive a windfall by the defendant's voluntary action. *See Royal Crown Cola,* 887 F.2d at 1489 ("A plaintiff may not collect attorney's fees for demanding of the defendant that which the defendant would have done in any case."). "Causal connection is established by evidence that the plaintiffs' lawsuit was a 'substantial factor or a significant catalyst in motivating the defendants to end their unconstitutional behavior.' " *Posada,* 716 F.2d at 1072 (quoting *Williams v. Leatherbury,* 672 F.2d 549, 551 (5th Cir.1982)). Appellants need not show that their lawsuit was the *sole* cause for the amending of the Ordinance, "so long as the plaintiffs' actions made an important contribution to the improvements achieved." *Id.* Because "defendants, on the whole, are usually rather reluctant to concede that the litigation prompted them to mend their ways," courts often look to other evidence, such as the chronology of events, to determine whether a given lawsuit caused the defendant to provide the requested relief. *Id.* While chronology is a significant clue, "chronology is not definitive because the question of causation is intensely factual." *Royal Crown Cola,* 887 F.2d at 1487. "Rather, a court must include all of the surrounding circumstances in its causation determination." *Id.*

The district court erred in holding that Appellants had failed to establish causation. While the district court did address the affidavit of James K. Green and the chronology of events in ruling on attorney's fees, it failed to consider evidence indicating that the parties had communicated about redrafting the Ordinance.[8]

---

[8]The district court treated this case as though the only factual evidence supporting Appellants' claim of causation was the chronology of events and held that chronology was insufficient without more evidence, such as "minutes of public meetings, witnesses called or other documentary evidence." R3-79 at 7. Because Appellants proffered other relevant evidence not considered by the district court in analyzing causation, we need not address the question of when, if ever, causation may be proved solely by reference to chronology. Also, in vacating the district court's ruling, we do not find that the district court erred in holding that Green's affidavit was incompetent. *Cf. Freund v. Butterworth,* 165 F.3d 839, 863 n. 34 (11th Cir.1999) (*en banc* ), (holding that expert testimony from an attorney could not be used to address a mixed question of law and fact that was to be decided by the court; addressing affidavit in context of claim of conflict of interest), *cert. denied,* --- U.S. ----, 120 S.Ct. 57, --- L.Ed.2d ---- (1999); *Provenzano v. Singletary,* 148 F.3d 1327, 1332

This evidence includes the letters, attached to Appellants' Memorandum in Support of their Motion for Attorney's Fees and Costs. The court also failed to consider the City's admission that it had advised Appellants that it would revise the Original Code despite its own belief that such revisions were not required by the Constitution and that it had provided Appellants with copies of the proposed revisions. R1-39 at 2. Courts, including this one, have found causation where the parties had negotiated or discussed proposed changes to rules or other behavior. *See, e.g., Dunn,* 889 F.2d at 1014 (basing finding of causation on favorable chronology of events and on showing that the defendant had considered comments of the plaintiffs' counsel in altering the rule at issue in the case); *Morrison v. Ayoob,* 627 F.2d 669, 672 (3d Cir.1980) (finding that plaintiffs had shown causation where parties' counsel had informal contact prior to the filing of the lawsuit and where change in behavior did not occur until after lawsuit was filed and parties' counsel subsequently had more formal discussions). Additionally, the City provided no countervailing evidence of other justifications for amending the Original Ordinance. *Compare with Royal Crown Cola,* 887 F.2d at 1487-88 (finding that plaintiff could not prove causation where merger at issue in case was barred by administrative action taken by FTC). The district court's failure to consider evidence indicating that the parties had discussed the proposed changes prior to their implementation "leaves us with the definite and firm conviction that the district court has made a mistake." *Posada,* 716 F.2d at 1072 (discussing factual findings as to causation). On remand, the district court should consider the evidence addressed in this opinion and may choose, as it deems appropriate, to open the record to consider other probative evidence on the issue of causation.

3.      *Colorable claim*

The third element of the catalyst test has been expressed as requiring a showing "that the defendant's conduct was required by law," *Dunn,* 889 F.2d at 1015, that the defendant's conduct does not constitute a "nuisance settlement," *Tyler v. Corner Construction Corp., Inc.,* 167 F.3d 1202, 1206 (8th Cir.1999), or that

(11th Cir.) (same;  addressing affidavit in context of claim of ineffective assistance of counsel), *reh'g and reh'g en banc denied,* 162 F.3d 100 (11th Cir.1998).

10

"the plaintiff's suit was neither 'frivolous, unreasonable, [n]or groundless'," *Little Rock Sch. Dist.,* 17 F.3d at 262 (quoting *United Handicapped Fed'n v. Andre,* 622 F.2d 342, 346-47 (8th Cir.1980); brackets in original). These different formulations all address the same concern: that plaintiffs should not be deemed to be prevailing parties if their claims are objectively unmeritorious. *See Tyler,* 167 F.3d at 1206 ("What a court ought to do ... is to concentrate on the objective meritoriousness of a plaintiff's claim, and refuse to award fees if the claim is frivolous or groundless."). *See also Dunn,* 889 F.2d at 1015 (discussing "no colorable claim" element as relating to the objective merits of the claim). This element of the claim was not addressed by the district court or in the briefs of either of the parties, and, while the City did state at oral argument that attorney's fees were inappropriate in this case because the relief achieved in this case was not constitutionally required, the City cited to no case law in support of this claim. On remand, the district court should make specific findings regarding the objective meritoriousness of Appellants' claims. Appellants are not required " 'to show that they would have won on the merits' " but, instead, " 'need only show that the action taken by appellees was "not a wholly gratuitous response to an action that in itself was frivolous." ... A claim is not frivolous if it is arguably supported by case or statutory law.' " *Dunn,* 889 F.2d at 1015 (quoting *Garcia v. Guerra,* 744 F.2d 1159, 1162-63 (5th Cir.1984)). This inquiry is more limited than a full trial on the merits and, indeed, is taken "to avoid conducting the very trial mooted by a defendant's voluntary compliance." *Little Rock Sch. Dist.,* 17 F.3d at 262 n. 1. If Appellants' claims as to the relief received through the amendments to the picketing ordinance were "colorable" or had a "reasonable likelihood of success on the merits," *see Ketterle,* 909 F.2d at 430, and were not "significantly lacking in merit as an objective matter," *Tyler,* 167 F.3d at 1206, the district court should find that Appellants have met the third element of the catalyst test.[9]

---

[9]The *Tyler* court emphasized the "objective" nature of this element because the district court in that case had incorrectly focused on the subjective mindset of the defendant. 167 F.3d at 1206. We agree that the fact that a defendant views a plaintiff's claims as lacking in merit or ultimately doomed to failure is not relevant to the question of whether the plaintiff's claims were frivolous or meritless. *See id.* ("We think that it would be unjust to deny a plaintiff his or her attorney's fees simply because a defendant thought that the plaintiff's claim was completely lacking in merit. Defendants no doubt often think that this is the case when, in fact,

### III. *CONCLUSION*

We VACATE the district court's order denying Appellants' motion for attorney's fees and costs and REMAND for proceedings in accordance with this opinion.

---

it is not.").